[No. 82567-0. En Banc.]

Argued February 25, 2010.     Decided August 12, 2010.

*In the Matter of the Personal Restraint of* SCHAWN JAMES CRUZE, *Petitioner.*

[32] *See id.*

[33] *See* BR at 71.

424

*Jeffrey E. Ellis* (of *Oregon Capital Resource Center*), for petitioner.

*Arthur D. Curtis, Prosecuting Attorney,* and *Rachael R. Probstfeld, Deputy,* for respondent.

¶1 OWENS, J. — Schawn James Cruze was sentenced to life in prison without the possibility of parole under the "three strikes" provision of the Persistent Offender Account-

ability Act. Former RCW 9.94A.120(4) (1996), *recodified as* RCW 9.94A.570. Cruze filed this personal restraint petition (PRP), arguing that the second conviction on which his sentence relied is not a most serious offense, or "strike." Because Cruze filed this PRP more than one year after his judgment and sentence became final, it is time barred unless invalid on its face. Resolution of this case comes down to a single question: is a special verdict determining that Cruze was armed with a firearm a "deadly weapon verdict under [former] RCW 9.94A.125"? Former RCW 9.94A.030(23)(t) (1996), *recodified as* RCW 9.94A.030(29)(t). Based on a plain reading of the statute, we hold that a deadly weapon verdict under former RCW 9.94A.125 (1983), *recodified as* RCW 9.94A.825, includes a special verdict finding that a defendant was armed with a firearm. As a result, we dismiss Cruze's PRP as time barred.

## FACTS

¶2 Cruze's relevant criminal history begins with a 1991 conviction for second degree assault. Cruze does not challenge the validity of this conviction, nor does he challenge its subsequent use for the purpose of finding that he is a persistent offender subject to life imprisonment without the possibility of parole.

¶3 In 1996, Cruze was convicted of violating the Uniform Controlled Substances Act, chapter 69.50 RCW, based on his possession of methamphetamine. In addition to finding Cruze guilty of possession, the jury also found, by special verdict, that Cruze was armed with a firearm at the time of his possession. In the judgment and sentence, the judge checked the box indicating, "A special verdict/finding was returned, having been specially alleged and proven, indicating the use of a firearm as defined by RCW 9.41.010 and 9.94A.125 at the time of the commission of the crimes charged in Count[ ] 2." J. & Sentence, Clark County Super. Ct. No. 97-9-00429-1 (Jan. 30, 1997) (App. B to PRP). The judge left blank the box indicating, "A special verdict/

finding was returned, having been specially alleged and proven, indicating the use of a deadly weapon other than a firearm as defined by RCW 9.94A.125 at the time of the commission of the crimes charged in Count(s) ___." *Id.*

¶4 In 1997, Cruze was, for the second time, found guilty of second degree assault. The trial court determined that the crime was a most serious offense and that two of Cruze's previous offenses were also most serious offenses. As a result, the trial court determined that Cruze was a persistent offender and sentenced him to life in prison without the possibility of parole pursuant to former RCW 9.94A.120(4). Cruze does not challenge the use of this third conviction for the purpose of finding that he is a persistent offender.

¶5 Cruze filed his present PRP, challenging the classification of his 1996 conviction as a most serious offense and his resulting designation as a persistent offender, in Division Two of the Court of Appeals in 2008. The Court of Appeals transferred the petition to this court, and we retained the petition for a decision on the merits.

## ISSUE

¶6 Is a special verdict finding that the defendant used a firearm a "deadly weapon verdict," as that term is used in former RCW 9.94A.030(23)(t), such that Cruze's judgment and sentence is facially valid?

## STANDARD OF REVIEW

¶7 This case concerns solely the interpretation of a statute, which is a question of law that this court reviews de novo. *City of Seattle v. Winebrenner*, 167 Wn.2d 451, 456, 219 P.3d 686 (2009).

## ANALYSIS

¶8 Cruze's judgment and sentence became final in 2000, eight years prior to his present PRP. As a result,

Cruze's petition is time barred under RCW 10.73.090(1) unless it is invalid on its face, it was not rendered by a court of competent jurisdiction, or one of the factors listed in RCW 10.73.100 applies. Cruze argues that the sentence is facially invalid because one of the three convictions that the trial court determined were most serious offenses, and served as a necessary basis for the sentence, does not meet the statutory definition of "most serious offense." Cruze is correct that a sentence exceeding the period authorized by law is invalid on its face. *In re Pers. Restraint of Tobin*, 165 Wn.2d 172, 175-76, 196 P.3d 670 (2008). If Cruze is also correct that the conviction relied upon in the judgment and sentence does not meet the statutory definition of "most serious offense," the sentence of life imprisonment is in excess of the period of imprisonment authorized by law, which the sentencing court determined would be up to 10 years. In order to determine whether Cruze's petition is time barred, then, we must turn to the merits of his argument and interpret the meaning of the term "most serious offense."

¶9 When interpreting a statute, "the court's objective is to determine the legislature's intent." *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). If the meaning of a statute is plain on its face, we " 'give effect to that plain meaning as an expression of legislative intent.' " *Id.* (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)). In determining the plain meaning of a provision, we look to the text of the statutory provision in question as well as "the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Id.* If, after this inquiry, the statute is susceptible to more than one reasonable interpretation, it is ambiguous and we "may resort to statutory construction, legislative history, and relevant case law" to resolve the ambiguity. *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007). If the statute remains ambiguous after both attempting to determine the plain meaning and resorting to tools of statutory construction, we then employ

the rule of lenity and interpret ambiguities in favor of the criminal defendant. *In re Pers. Restraint of Sietz*, 124 Wn.2d 645, 652, 880 P.2d 34 (1994); *see State v. Coria*, 146 Wn.2d 631, 639, 48 P.3d 980 (2002) ("[T]he rule of lenity does not preclude ordinary statutory construction.").

■ ■ ¶10 We begin our analysis with the plain text of the provisions at issue in this case. Cruze challenges only the use of his 1996 conviction as a most serious offense, so the relevant definition comes from former RCW 9.94A.030(23)(t), which provides, " 'Most serious offense' means . . . [a]ny other felony with a deadly weapon verdict under RCW 9.94A.125." There is no dispute that Cruze's conviction for possession of methamphetamine is a felony, so our inquiry is limited to determining whether "a deadly weapon verdict under RCW 9.94A.125" includes a special verdict by a jury finding that Cruze was armed with a firearm at the time of the charged felony. This takes us to the language of former RCW 9.94A.125, which provides:

> In a criminal case wherein there has been a special allegation and evidence establishing that the accused or an accomplice was armed with a deadly weapon at the time of the commission of the crime, the court shall make a finding of fact of whether or not the accused or an accomplice was armed with a deadly weapon at the time of the commission of the crime, or if a jury trial is had, *the jury shall, if it find[s] the defendant guilty, also find a special verdict as to whether or not the defendant or an accomplice was armed with a deadly weapon at the time of the commission of the crime.*
>
> For purposes of this section, a deadly weapon is an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death. *The following instruments are included in the term deadly weapon*: Blackjack, sling shot, billy, sand club, sandbag, metal knuckles, *any* dirk, dagger, *pistol, revolver, or any other firearm.*

(Emphasis added.) (Alteration in original.) This statute has two principal effects: first, it sets forth a required procedure and, second, it defines the term "deadly weapon."

¶11 Based on the plain text of former RCW 9.94A.125 alone, we would have little difficulty concluding that the special verdict finding that Cruze used a firearm is a "deadly weapon verdict under RCW 9.94A.125." The statute explicitly includes all firearms within the definition of "deadly weapon," and the finding was in the form of a special verdict by a jury. Cruze argues, however, that the "Hard Time for Armed Crime Act" (HTACA), Laws of 1995, ch. 129 (Initiative Measure No. 159, approved Apr. 20, 1995), compels a different reading of former RCW 9.94A.125. Because the HTACA amended parts of chapter 9.94A RCW, it is relevant to determining the plain meaning of former RCW 9.94A-.030(23)(t) and former RCW 9.94A.125.

¶12 The HTACA took what was formerly a single sentence enhancement for offenders armed with a deadly weapon and replaced it with two sentence enhancements: one for offenders armed with a firearm and one for offenders armed with a "deadly weapon as defined by this chapter other than a firearm."[1] LAWS OF 1995, ch. 129, § 2; former RCW 9.94A.310(3), (4) (1995), *recodified as* RCW 9.94A-.533(3), (4). Whereas the former "deadly weapon" sentence enhancement provided for up to two additional years of imprisonment *regardless of the deadly weapon used*, the new scheme authorized up to five years for those armed with firearms and up to two years for those armed with a deadly weapon other than a firearm.

¶13 Cruze reads the HTACA amendments as creating two mutually exclusive sentence enhancements—one for "deadly weapons" and another for "firearms." A firearm sentence enhancement, according to Cruze, is therefore not a deadly weapon sentence enhancement. Because imposition of a sentence enhancement requires a corresponding jury verdict, Cruze reasons that a special verdict finding the use of a firearm is not a "deadly weapon verdict under RCW

---

[1] The HTACA also expanded the list of crimes subject to a sentence enhancement. LAWS OF 1995, ch. 129, § 2.

9.94A.125." Cruze misreads the post-HTACA statutory scheme.

¶14  On their face, the HTACA amendments do not distinguish between enhancements for use of a "firearm" and for use of a "deadly weapon"; they distinguish between enhancements for use of a "firearm" and for use of a "deadly weapon *other than* a firearm." RCW 9.94A.533(3), (4) (emphasis added). The inclusion of the "other than a firearm" language makes it clear that the HTACA treats firearm enhancements, per former RCW 9.94A.310(3), and deadly-weapon-other-than-a-firearm enhancements, per former RCW 9.94A-.310(4), as two subsets of the larger category of deadly weapon enhancements. This reading is confirmed by former RCW 9.94A.105(2)(d) (1995), former RCW 9.94A.150(1) (1996), and former RCW 9.94A.470 (1995), which all use the phrase "deadly weapon enhancements under RCW 9.94A.310 (3) or (4), or both." *See* former RCW 9.94A-.310(3)(d) (referring to "deadly weapon enhancements . . . under (a), (b), and/or (c) of this subsection or subsection (4) (a), (b), and/or (c) of this section, or both"). This is sufficient to make clear that the statutory scheme treated both types of enhancements, for firearms and deadly weapons other than firearms, as deadly weapon enhancements.

¶15  A deadly weapon enhancement, in turn, is authorized by a deadly weapon verdict or finding. The only provision of former chapter 9.94A RCW (1997) defining a "deadly weapon verdict" is former RCW 9.94A.125. The HTACA did not amend former RCW 9.94A.125; it left in place the statutory definition of a "deadly weapon" that included a firearm. Simply put, the HTACA did not alter the fact that a firearm is a deadly weapon and that a special verdict finding that a defendant used a firearm is a deadly weapon verdict for purposes of former RCW 9.94A.125.

¶16  Cruze's proposed interpretation is not a reasonable one. The HTACA distinguished between firearms and deadly weapons other than firearms. In doing so, it acknowledged that a firearm remains a type of deadly weapon. Cruze's interpretation would have us read the words "other than a

firearm" out of the statute. Cruze's interpretation would also have us ignore the fact that former RCW 9.94A.125 expressly included all firearms within its definition of the term "deadly weapon." Further, Cruze would have us ignore the numerous statutory provisions referring to both firearm enhancements and deadly-weapon-other-than-a-firearm enhancements as "deadly weapon enhancements." Such an interpretation is not reasonable.

¶17 In sum, the plain meaning of the term "deadly weapon verdict under RCW 9.94A.125," former RCW 9.94A.030(23)(t), is apparent from the text and context of the statute. It is a verdict meeting the procedural requirements of former RCW 9.94A.125 and finding that the defendant used an implement that that statute defines as a "deadly weapon." Having determined the plain meaning of the statute and finding no other reasonable interpretation, we must give effect to that plain meaning. Doing so, we have no difficulty concluding that a jury's special verdict finding that Cruze was armed with a firearm at the time of the offense is a "deadly weapon verdict under RCW 9.94A.125," for former RCW 9.94A.125 expressly includes all firearms within its definition of the term "deadly weapon."

¶18 We further note that a resort to legislative history, though unnecessary, only bolsters our conclusion. The stated intent of the HTACA was to "[d]istinguish between the gun predators and criminals carrying other deadly weapons and *provide greatly increased penalties for gun predators.*" LAWS OF 1995, ch. 129, § 1(c) (emphasis added). Were we to interpret the statute in the manner Cruze advocates, many gun predators would receive greatly *reduced* penalties as compared to criminals using other deadly weapons, since the gun predators' offenses would not count as most serious offenses, while the offenses of those armed with other deadly weapons *would* constitute most serious offenses. Only those using deadly weapons other than firearms would be subject to life imprisonment with-

out the possibility of parole. This would conflict with the stated intent of the HTACA.

¶19 Our prior decisions in *State v. Recuenco*, 163 Wn.2d 428, 180 P.3d 1276 (2008), and *State v. Williams-Walker*, 167 Wn.2d 889, 225 P.3d 913 (2010), also do not compel a different conclusion. *Recuenco* and *Williams-Walker* concerned which sentence enhancement is authorized by a given deadly weapon verdict. The relevant facts of both cases were the same: a jury found that the defendants had used a "deadly weapon" but did not specify what that deadly weapon was, *Williams-Walker*, 167 Wn.2d at 893-94; *Recuenco*, 163 Wn.2d at 432, and the trial judge then proceeded to impose a sentence enhancement that was authorized only if the defendant was armed with a firearm at the time of the offense. *Williams-Walker*, 167 Wn.2d at 893-94; *Recuenco*, 163 Wn.2d at 432. There was no question that the juries had returned deadly weapon verdicts; the only question was which, if either, of the deadly weapon sentence enhancements those verdicts authorized.

¶20 Our conclusion in both *Recuenco* and *Williams-Walker* was that, where a jury trial is had, a sentencing judge may impose only the sentence enhancement authorized by a jury's verdict and that imposition of a greater sentence enhancement may never be harmless. *Williams-Walker*, 167 Wn.2d at 900-02; *Recuenco*, 163 Wn.2d at 441-42; *see Blakely v. Washington*, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) ("[T]he 'statutory maximum' for *Apprendi* [*v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)] purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*"); *Apprendi*, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). As explained in *Williams-Walker*, where there is no deadly weapon special verdict, neither deadly weapon sentence enhancement may be imposed. 167 Wn.2d at 901. Where the

jury returns a deadly weapon special verdict and the deadly weapon with which the defendant was armed is either unspecified or specified to be one other than a firearm, only the lesser deadly-weapon-other-than-a-firearm enhancement is authorized. *See id.* This is true even where the underlying conviction reveals that the defendant was armed with a firearm. *Id.* at 900. Only where the deadly weapon special verdict finds that the defendant was armed with a firearm is the firearm sentence enhancement authorized. *Id.* at 901. Because, under the facts of *Recuenco* and *Williams-Walker*, only the lesser deadly-weapon-other-than-a-firearm sentence enhancement was authorized, this court reversed the imposition of the firearm sentence enhancement. *Id.* at 901-02; *Recuenco,* 163 Wn.2d at 442.

¶21 The holdings of *Recuenco* and *Williams-Walker* address which of the two deadly weapon enhancements is authorized by a given deadly weapon verdict. Neither case's holding casts any doubt on the clear statutory language indicating that a firearm is a deadly weapon and, therefore, that a special verdict finding that the defendant was armed with a firearm is a deadly weapon verdict. *See* former RCW 9.94A.125. In Cruze's case, the jury found, by special verdict, that he was armed with a firearm at the time he committed the underlying felony. This special verdict was a deadly weapon verdict, and Cruze was convicted of a "felony with a deadly weapon verdict under RCW 9.94A.125," former RCW 9.94A.030(23)(t), which is a most serious offense. The trial court's determination that Cruze was a persistent offender and its sentence of life imprisonment without the possibility of parole were not erroneous. Cruze's judgment and sentence is facially valid and his PRP is therefore time barred.[2]

---

[2] Cruze also argues that an exception to the time bar applies because the sentence was in excess of the trial court's authority. *See* RCW 10.73.100(5). However, this argument fails for precisely the same reasons that his judgment and sentence is facially valid.

## CONCLUSION

¶22 A deadly weapon verdict is any verdict or finding made in compliance with the procedures of former RCW 9.94A.125 that determines that the defendant used an item that former RCW 9.94A.125 defined as a "deadly weapon." Here, the jury found, by special verdict, that Cruze used a firearm. Former RCW 9.94A.125 expressly defined all firearms as "deadly weapons." The jury's verdict was therefore a "deadly weapon verdict under [former] RCW 9.94A.125," *see* former RCW 9.94A.030(23)(t), and, thus, a most serious offense that was properly counted in determining whether Cruze should be sentenced as a persistent offender. The judgment and sentence, therefore, is facially valid and no exception to the one-year time bar applies. As such, we dismiss Cruze's PRP as time barred.

MADSEN, C.J., and C. JOHNSON, CHAMBERS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.

¶23 ALEXANDER, J. (dissenting) — I dissent. The issue in this case is whether a special "firearm" verdict that a jury rendered in 1996 is a "deadly weapon" verdict. This issue is particularly significant here because if it is considered a "deadly weapon" verdict, it gives Schawn Cruze a third strike and his sentence of life imprisonment without the possibility of parole must stand. The majority, after engaging in a statutory interpretation analysis, concludes that even though Cruze had been convicted by the jury specifically for use of a firearm, pursuant to the definition of "deadly weapon" in former RCW 9.94A.125 (1983),[3] the jury's verdict was a "deadly weapon" verdict and not a "firearm" verdict. This conclusion is incorrect because it fails to recognize Cruze's rights to due process and to a jury trial, pursuant to our decisions in *State v. Recuenco*, 163

---

[3] *Recodified as* RCW 9.94A.825.

Wn.2d 428, 180 P.3d 1276 (2008), and *State v. Williams-Walker*, 167 Wn.2d 889, 225 P.3d 913 (2010).

¶24 Key to this case is former RCW 9.94A.030(23)(t) (1996), *recodified as* RCW 9.94A.030(29)(t), which defines a " '[m]ost serious offense' " as "[a]ny ... felony with a deadly weapon *verdict* under [former] RCW 9.94A.125." (Emphasis added.) Cruze, the record shows, was found guilty of possession of methamphetamine, a felony, and the jury rendered a special verdict, in which it answered "yes" to the following question: "Was the defendant Schawn James Cruze armed with a firearm at the time of the commission of the crime?" Pers. Restraint Pet. App. A.

¶25 It is clear that at the time Cruze was sentenced for the methamphetamine offense, the sentencing judge properly treated the finding as a "firearm" verdict for purposes of sentence enhancement. Now that we are concerned with sentencing for a subsequent felony, second degree assault, which the State asserts is a third strike, the State is contending that the "firearm" special verdict on the possession of methamphetamine charge was a "deadly weapon" special verdict. In my judgment, because the State, at its request, obtained a "firearm" verdict instead of a "deadly weapon" verdict, it cannot now establish, 14 years after the fact, that it is a "deadly weapon" verdict.

¶26 In *Recuenco*, we held that applying a sentence enhancement that was not found by the jury, despite its being implied in the conviction, was a violation of Recuenco's due process rights. *Recuenco*, 163 Wn.2d 428. There, Recuenco was charged with, and convicted of, second degree assault with a "deadly weapon" enhancement. We determined that Recuenco's due process rights were violated by the trial court when it imposed a "firearm" enhancement at sentencing rather than a "deadly weapon" enhancement. In doing so, we said that "[a]n accused has a constitutionally protected right to be informed of the criminal charge against him, so he will be able to prepare and mount a defense at trial." *Id.* at 440 (citing *State v. McCarty*, 140 Wn.2d 420, 425, 998 P.2d 296 (2000)). Cruze, like Recuenco, was denied

due process, i.e., his right to be informed of the "firearm" enhancement that the State claims it was seeking.

¶27 In another case, *Williams-Walker*, we held that not only must a jury find a sentence enhancement, it "also must specify the type of weapon used," and that "[a] sentence enhancement must not only be alleged, it also must be authorized by the jury in the form of a special verdict." *Williams-Walker*, 167 Wn.2d at 898, 900. The defendant there was convicted of first degree robbery and first degree murder and, similar to the defendant in *Recuenco*, the jury returned a finding by a "deadly weapon" special verdict. However, the defendant was sentenced as though the jury had returned a "firearm" special verdict. We held in *Williams-Walker*, as we had in *Recuenco*, that where a sentencing judge exceeds the sentence allowed by the jury verdict, the judge commits error and the accused must be resentenced. We specifically declined to hold that "guilty verdicts alone are sufficient to authorize sentence enhancements." *Id.* at 899.

¶28 In the instant case, the State could have sought a special verdict form that asked, "Was the defendant armed with a deadly weapon, to wit: a firearm at the time of the commission of the crime?" The State, however, chose not to pursue a "deadly weapon" verdict at the time of Cruze's 1996 proceedings, perhaps because it wanted the greater enhancement that flows from a "firearm" finding. To allow the State to now change its position 14 years after the methamphetamine sentence is a violation of Cruze's due process rights and his right to a trial by jury. *See* WASH. CONST. art. I, §§ 21-22.

¶29 In sum, Cruze was charged with possession of methamphetamine and his sentence was enhanced by the jury's "firearm" finding. The State never requested a "deadly weapon" enhancement, nor did the jury return a "deadly weapon" enhancement. Now, after the fact, the State is asserting that what the jurors reached was actually a "deadly weapon" verdict. This position finds no support in the cases cited above. Indeed, I believe it was a fundamental

due process violation to convict Cruze of one offense and sentence him for another, a practice we have repeatedly held to be unconstitutional. *See Williams-Walker*, 167 Wn.2d 889; *Recuenco*, 163 Wn.2d 428; *see also State v. Theroff*, 95 Wn.2d 385, 622 P.2d 1240 (1980) (holding that failure to give notice of a sentencing enhancement prior to trial was a due process violation); *State v. Frazier*, 81 Wn.2d 628, 503 P.2d 1073 (1972) (stating that where a factor aggravates an offense and imposes a greater punishment, due process requires its presentation to a jury for consideration); *State v. Nass*, 76 Wn.2d 368, 456 P.2d 347 (1969) (holding that any factor that would enhance a sentence must be alleged prior to trial to allow defendant time to respond).

¶30 For the reasons stated above, I conclude that Cruze's due process rights and his right to a jury trial have been violated. Because the majority concludes otherwise, I respectfully dissent.

SANDERS, J., concurs with ALEXANDER, J.