[No. 86270-2. En Banc.]
Argued May 15, 2012. Decided July 19, 2012.

THE STATE OF WASHINGTON, *Respondent*, v. LEYSA LYNN
SWEANY, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. LEAH LYNN
SWEANY, *Petitioner*.

910

*Thomas M. Kummerow* (of *Washington Appellate Project*) and *Susan M. Gasch* (of *Gasch Law Office*), for petitioner.

*Andrew K. Miller, Prosecuting Attorney*, and *Terry J. Bloor, Deputy*, for respondent.

¶1 OWENS, J. — Leysa and Leah Sweany challenge the sufficiency of the evidence supporting their convictions for arson in the first degree. In 2009, a fire damaged the Sweanys' trailer. The State charged both defendants with alternative means of committing arson in the first degree,

relying on the means of causing "a fire or explosion which damages a dwelling," RCW 9A.48.020(1)(b), and on the means of causing "a fire or explosion on property valued at ten thousand dollars or more with intent to collect insurance proceeds," RCW 9A.48.020(1)(d). The Sweanys argue that the State failed to present sufficient evidence that the property on which they caused a fire was valued at $10,000 or more. Though we conclude that the Sweanys correctly argue that the relevant value is the fair market value of the property, we also conclude that sufficient evidence supported this element. Accordingly, we affirm the Court of Appeals judgment upholding their convictions.

## FACTS

¶2 In 2001, Juanita Silvers purchased a single-wide, 1982 Fleetwood trailer for use by members of her family, including her daughter, Leysa Sweany, and her granddaughter, Leah Sweany. Though the asking price for the trailer was $15,000, Ms. Silvers negotiated a purchase price of $10,500. Ms. Silvers also rented a space in the Santiago Estates manufactured/mobile home community in Kennewick. In 2007 or 2008, Silvers transferred title to the trailer to Leysa. Leysa initially obtained $65,000 in insurance coverage for the trailer but later reduced the coverage to $45,000.

¶3 On December 9, 2008, Leysa was served with an eviction notice from Santiago Estates and there was an oral agreement that she would vacate the lot by December 31, 2008. The Sweanys did not depart by the agreed upon date.

¶4 On January 7, 2009, one of the Sweanys' neighbors noticed smoke coming from the Sweanys' home and called 911. Fire investigators determined that the fire originated on or near the stove top, where a burner had been left on high and where combustible items had been left. The home's smoke detectors were disabled and the household pets had all been placed out of harm's way the day of the

fire. The night before the fire, Leah had remarked to a neighbor that if her home were to catch fire, she and her mother would receive insurance money. At some point after the fire, Leah told two of her friends that she and her mother had intentionally left items on the stove and turned it on before leaving the house on January 7.

¶5 On April 21, 2009, the State charged Leysa and Leah with second degree arson. In November, the State amended the charges against both defendants to first degree arson based on the alternative means of damaging a dwelling, *see* RCW 9A.48.020(1)(b), and that the fire was caused "on property valued at ten thousand dollars or more with intent to collect insurance proceeds," RCW 9A.48.020(1)(d).

¶6 At trial, the testimony about the value of the property varied. In addition to testimony about the asking and sale prices in 2001, Leysa testified that the trailer might have presently been worth "[a] little bit more" than $10,000. 3 Verbatim Report of Proceedings (VRP) at 474-75. Tonia Lindgren, the community manager for Santiago Estates, testified that a standard, single-wide trailer built prior to 1995 could sell for between $6,000 and $12,000. The Benton County assessor assessed the value of the property at $8,350.

¶7 The jury found both Leysa and Leah guilty of first degree arson. The Sweanys appealed their convictions, contending that the alternative means relating to property valued at $10,000 or more was not supported by sufficient evidence. The Court of Appeals affirmed the convictions. *State v. Sweany*, 162 Wn. App. 223, 226, 256 P.3d 1230 (2011). The Sweanys filed a petition for review, which we granted. *State v. Sweany*, 172 Wn.2d 1020, 268 P.3d 224 (2011).

## ISSUES

¶8 1. Does RCW 9A.48.020(1)(d) refer to market value or insurance value?

914

¶9 2. Does sufficient evidence support the Sweanys' convictions?

## ANALYSIS

I. Standard of Review

■ ■ ¶10 First degree arson is an alternative means crime. *State v. Flowers*, 30 Wn. App. 718, 722-23, 637 P.2d 1009 (1981). When a defendant challenges the sufficiency of the evidence in an alternative means case, appellate review focuses on whether "sufficient evidence supports each alternative means." *State v. Kintz*, 169 Wn.2d 537, 552, 238 P.3d 470 (2010). Though some cases refer to the required quantum of evidence as "substantial evidence," the analysis has consistently been conducted according to the sufficiency of the evidence standard. *See, e.g.*, *In re Det. of Halgren*, 156 Wn.2d 795, 811, 132 P.3d 714 (2006); *State v. Lee*, 128 Wn.2d 151, 160, 164, 904 P.2d 1143 (1995). "The standard of review for a challenge to the sufficiency of the evidence" is whether, viewing the evidence "in a light most favorable to the State, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *State v. Randhawa*, 133 Wn.2d 67, 73, 941 P.2d 661 (1997) (internal quotation marks omitted) (quoting *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)).

II. The Term "Valued At" in RCW 9A.48.020(1)(d) Refers to Market Value

■ ¶11 The first issue in this case concerns the correct interpretation of RCW 9A.48.020(1)(d), which we refer to as the "insurance proceeds" means of committing first degree arson. Interpretation of this statute is necessary to determine the sufficiency of the State's evidence. When interpreting a statute, our fundamental objective is to determine and give effect to the intent of the legislature. *State v. Budik*, 173 Wn.2d 727, 733, 272 P.3d 816 (2012). Because "[t]he surest indication of legislative intent is the language

enacted by the legislature," we begin by attempting to ascertain the plain meaning of the statutory provision. *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010). This inquiry looks "to the text of the statutory provision in question, as well as 'the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.' " *Id.* (quoting *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)). If the statute is ambiguous, we "may look to the legislative history of the statute and the circumstances surrounding its enactment to determine legislative intent." *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003). The rule of lenity applies only after unsuccessful application of the foregoing principles. *In re Pers. Restraint of Cruze*, 169 Wn.2d 422, 427-28, 237 P.3d 274 (2010).

¶12 The insurance proceeds means of committing arson in the first degree provides that

> (1) [a] person is guilty of arson in the first degree if he or she knowingly and maliciously:
>
> . . . .
>
> (d) Causes a fire or explosion on property valued at ten thousand dollars or more with intent to collect insurance proceeds.

RCW 9A.48.020. The specific issue in dispute is whether "property valued at ten thousand dollars or more" refers to the property's market value or to the property's insured value. The term "valued at" is not defined by statute.

¶13 We hold that the term "valued at" in RCW 9A.48.020(1)(d) refers to market value. This is the more natural reading of the statute. The insurance proceeds subsection, read naturally, breaks down into three independent requirements: (1) "[c]auses a fire or explosion" (2) "on property valued at ten thousand dollars or more" (3) "with intent to collect insurance proceeds." RCW 9A.48.020(1)(d). Reading the phrase "on property valued at ten thousand dollars or more" independently, fair market value is the only

logical way to interpret the term "valued at." *See Jackson v. State*, 1991 OK CR 103, 818 P.2d 910, 911 ("[M]arket value is the usual standard of valuation."). This is also consistent with the dictionary definition of the verb "value," which is "to estimate or assign the monetary worth of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2531 (2002); *cf. State v. Gonzalez*, 168 Wn.2d 256, 263, 226 P.3d 131 (holding that when a term is undefined by statute, it is given its "ordinary meaning, and the court may look to a dictionary for such meaning"), *cert. denied*, 131 S. Ct. 318 (2010).

¶14 Under this interpretation, one who causes a fire or explosion on property with a market value of $10,000 or more with intent to collect insurance proceeds has met the requirements of RCW 9A.48.020(1)(d) regardless of the amount for which the property is insured. The only instances in which this distinction will make a difference are those in which the property is overinsured (i.e., insured for a value in excess of the market value of the property). Even under this interpretation, the fact of overinsurance remains relevant to show motive to commit arson. *See State v. Picard*, 90 Wn. App. 890, 901-02, 954 P.2d 336 (1998) (citing *State v. Despain*, 152 Wash. 488, 489-91, 278 P. 173 (1929)). Further, the intentional burning of insured property with a market value of less than $10,000 may violate RCW 48.30-.220, which prohibits additional types of insurance fraud.

¶15 The State's interpretation of the insurance proceeds subsection, though conceivable, is not reasonable because it fails to satisfactorily account for the structure of the statute. The State contends that "valued at" refers to the value of the insurance policy. While the terms "insurance proceeds" and "valued at" occupy the same sentence, from a grammatical perspective the latter plainly does not modify the former. Had the legislature intended to make application of the insurance proceeds subsection turn on the value of the insurance proceeds the arsonist intended to collect, it could have done so clearly and concisely, such as by provid-

ing that the first degree arson statute applies to one who "causes a fire or explosion on property with intent to collect insurance proceeds of ten thousand dollars or more" or one who "causes a fire or explosion on property insured for ten thousand dollars or more with intent to collect insurance proceeds." The legislature did not do so, however, and it is not for the judiciary to rewrite the statute. *See In re Det. of Martin*, 163 Wn.2d 501, 509, 182 P.3d 951 (2008).

### III. Sufficient Evidence Supported the Sweanys' Convictions

¶16 We must now determine whether sufficient evidence supported the Sweanys' convictions under a correct interpretation of the statute. We hold that the State presented sufficient evidence from which a jury could conclude, beyond a reasonable doubt, that the property on which the Sweanys caused a fire had a fair market value of $10,000 or more.[1]

¶17 In general, fair market value " 'is the amount of money which a well informed buyer, willing but not obliged to buy the property, would pay, and which a well informed seller, willing but not obligated to sell it, would accept.' " *Holden v. Farmers Ins. Co. of Wash.*, 169 Wn.2d 750, 758, 239 P.3d 344 (2010) (internal quotation marks omitted) (quoting *State v. Rowley*, 74 Wn.2d 328, 334, 444 P.2d 695 (1968)). Four aspects of testimony, taken together, amounted to sufficient evidence with respect to the market value of the property: (1) the asking price for the trailer in 2001 was $15,000; (2) the trailer sold for $10,500 in 2001; (3) Leysa Sweany believed the home was worth "[a] little bit more" than $10,000 at the time of the fire, 3 VRP at 474-75; and (4) the manager of the manufactured/mobile home community testified that values for manufactured and mobile

---

[1] The Sweanys do not challenge the sufficiency of the evidence to show that the trailer was a dwelling, *see* RCW 9A.48.020(1)(b). Nor do the Sweanys challenge the sufficiency of the evidence to show that they intended to collect insurance proceeds.

homes built prior to 1995 sold for between $6,000 and $12,000. From these facts, a rational juror could have found that the State had proved, beyond a reasonable doubt, that the market value of the property was $10,000 or more.

¶18 To be sure, there was countervailing evidence as well, including the 2008 assessed value of the property, which was $8,350, and the poor condition of the trailer's interior. The presence of countervailing evidence is irrelevant, however, to a sufficiency-of-the-evidence challenge because the evidence is viewed in the light most favorable to the State. *State v. Ibarra-Cisneros*, 172 Wn.2d 880, 896, 263 P.3d 591 (2011). In essence, the Sweanys ask this court to accept the assessed value as dispositive evidence of market value. While an assessment may be powerful evidence of market value, it is not dispositive. Were it otherwise, property could never be "overvalued" or "undervalued" because those concepts rely on the existence of a difference between assessed and market values. Indeed, the witness testifying to the assessed value of the property stated that the actual value "could be more than that, could be less than that." 2 VRP at 330. Here, the jury was entitled to believe that the trailer was undervalued by the assessor based on other evidence that had been presented. Thus, the evidence was sufficient for a rational finder of fact to conclude that the fair market value of the property was $10,000 or more.

## CONCLUSION

¶19 We conclude that the phrase "property valued at" in RCW 9A.48.020(1)(d) refers to the fair market value of the property. Because we further conclude that the evidence presented by the State would permit a rational juror to find that the State had proved that the fair market value of the trailer to which the Sweanys set fire had a fair market

value of $10,000 or more, we affirm the judgment of the Court of Appeals upholding the Sweanys' convictions.

MADSEN, C.J., and C. JOHNSON, CHAMBERS, FAIRHURST, J.M. JOHNSON, STEPHENS, WIGGINS, and GONZÁLEZ, JJ., concur.