# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49624-1-II |
| Respondent, | |
| v. | |
| KHADIM HAKEEM GUEYE, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, P.J. — A jury convicted Khadim Gueye of third degree assault and second degree criminal trespass. Appealing his convictions, Gueye argues that (1) the evidence was insufficient and (2) he received ineffective assistance of counsel. We affirm.

## FACTS

### I. BACKGROUND FACTS

Transit employees observed Gueye sleeping on the ground at a bus island at the Tacoma Dome Station transit center where buses stop to pick up riders. Pierce Transit Public Safety Officer Kenny Gainey and Pierce Transit Public Safety Sergeant Paul Strozewski conducted a welfare check on Gueye. Officer Gainey was aware of a Pierce Transit policy prohibiting loitering, which includes sleeping on the premises.

Officer Gainey and Sergeant Strozewski approached Gueye where he was sleeping and blocking a walkway. Gueye threatened to "get a gun and shoot" Sergeant Strozewski and also

made vulgar comments about Sergeant Strozewski's mother and son. 3 Verbatim Transcript of Proceedings (VTP) at 37. Sergeant Strozewski handcuffed and detained Gueye, patted him down for weapons, and checked his bags for weapons. During this contact, Gueye was spitting on the ground continually, so Sergeant Strozewski turned Gueye's body around to prevent Gueye from spitting on him.

Officer Gainey issued an exclusion notice to Gueye, which is a written notice stating that a person cannot be on transit property for a specified period of time. While issuing the notice of exclusion, Officer Gainey explained to Gueye orally that he "can't come back on transit for . . . a year" and provided a written copy of the exclusion notice to him, which said that he was excluded from Pierce Transit property. 3 VTP at 38. Sergeant Strozewski explained the specific parameters of the exclusion notice to Gueye, saying that "you're not allowed to ride a bus or be at a transit center bus stop for the next . . . whatever the duration is. If you are, then you can be arrested for trespassing." 3 VTP at 46. Jose Perez-Soares, an eyewitness, heard the officers tell Gueye that he was not allowed to be "on the premises." 3 VTP at 25.

After Gueye received the exclusion notice, the officers removed his handcuffs. Gueye left the area on his own. Within 20 minutes after Gueye received the exclusion notice, he returned to the area.

Cynthia Kerrigan, a Pierce Transit bus driver, was driving a bus with approximately 20 people on it when she pulled into a bus zone at the Tacoma Dome Station. She received a notification that contained Gueye's description and stated that Gueye was not allowed to access Pierce Transit services.

2

Eyewitness Perez-Soares and approximately 30 other people were in line waiting to board Kerrigan's bus going to Seattle. Gueye cut in line and jumped onto the bus. Kerrigan informed Gueye that he was not allowed to ride the bus. Gueye spit on Kerrigan twice, hitting her face with saliva. Kerrigan did not ask Gueye to spit in her face and did not provide permission for him to do so.

Gueye left the bus and walked into a transit station parking garage. Pierce County Sheriff's Deputy Joseph McDonald searched for Gueye after receiving a report that Gueye spit on Kerrigan. Deputy McDonald contacted Gueye at the Tacoma Dome Station when he pursued Gueye on foot into the parking garage. The deputy found Gueye in the Pierce Transit parking garage on a level near the Link light rail station. Pierce Transit owned both the garage and light rail station property adjacent to the garage. Gueye made vulgar statements to Deputy McDonald and threatened to kill him.

The State charged Gueye with third degree assault against the bus driver, two counts of felony harassment against Sergeant Strozewski and Deputy McDonald, and second degree criminal trespass.

## II. PROCEDURE

### A. TESTIMONY

The case proceeded to a jury trial. The State presented testimony from Pierce Transit Public Safety Officer Joseph Mager, Officer Gainey, Sergeant Strozewski, Perez-Soares, Kerrigan, Deputy McDonald, and Pierce Transit Department of Public Safety's records supervisor Katie Marcelia. The witnesses testified consistent with the above facts. Gueye did not present any witnesses.

B. Video Footage

In addition to hearing testimony, the jury viewed Pierce Transit video footage from Kerrigan's bus. The video was recorded from a vantage point above the bus driver's seat so that individuals boarding the bus are clearly visible. Kerrigan was in the driver's seat, which was outside the scope of the camera, but she was at times partially visible to the camera.

The video shows Gueye entering the bus and Kerrigan stating that Gueye has been denied service by law enforcement and cannot ride the bus. As Kerrigan explains that he cannot ride, Gueye spits at her, turns to walk down the bus steps, and then turns back to Kerrigan and spits again. Kerrigan says, "Hey! Whoa!," and a passenger on the bus reacts by placing her hand over her mouth and looking back and forth between Gueye and the bus driver. Ex. 2 at 22 sec. to 30 sec. Kerrigan appears to wipe her hand and arm across herself in an upward motion.

C. Verdict and Sentencing

The jury convicted Gueye of second degree criminal trespass and third degree assault. The jury acquitted Gueye on the felony harassment charge against Sergeant Strozewski and could not reach a verdict on the felony harassment charge against Officer McDonald. The trial court declared a mistrial on the charge of felony harassment of Officer McDonald. Gueye appeals his third degree assault and criminal trespass convictions.

ANALYSIS

I. Sufficiency of the Evidence

Gueye asserts that the State submitted insufficient evidence to support Gueye's third degree assault and second degree criminal trespass convictions. We disagree.

## A. STANDARD OF REVIEW

We review sufficiency of the evidence de novo. *State v. Berg*, 181 Wn.2d 857, 867, 337 P.3d 310 (2014). When reviewing sufficiency of the evidence, we ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the crime's essential elements beyond a reasonable doubt. *State v. Sweany*, 174 Wn.2d 909, 914, 281 P.3d 305 (2012). We assume all of the State's evidence and any reasonable inferences from it are true, and all reasonable inferences from the evidence must be drawn in the State's favor and interpreted most strongly against the defendant. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). The jury can make reasonable inferences from the evidence based upon their common sense and experience. *See State v. Rich*, 184 Wn.2d 897, 906, 909, 365 P.3d 746 (2016); *State v. Salinas*, 87 Wn.2d 112, 123-24, 549 P.2d 712 (1976).

## B. THIRD DEGREE ASSAULT

Gueye acknowledges that he spit on Kerrigan. But he argues that the State failed to prove that Gueye's spitting on the bus driver was "offensive" and with "unlawful force." Appellant's Opening Br. - Corrected at 10, 12. Gueye's claim fails because the State's evidence that Gueye spit on Kerrigan without her consent supports each challenged element of third degree assault.

1. LEGAL PRINCIPLES

Under RCW 9A.36.031(1)(b), a person commits third degree assault if he or she "[a]ssaults a person employed as a transit operator or driver . . . while that person is performing his or her official duties at the time of the assault." An assault is "an intentional touching of another person, with unlawful force, that is harmful or offensive regardless of whether any physical injury is done

5

to the person." Clerk's Papers (CP) at 29; *see State v. Stevens*, 158 Wn.2d 304, 314, 143 P.3d 817 (2006).

A touching is "'offensive'" if it would offend an ordinary person who is not unduly sensitive. *State v. Villaneuva-Gonzalez*, 180 Wn.2d 975, 982, 329 P.3d 78 (2014). A touching is unlawful when it is not legally consented to nor otherwise privileged and is harmful or offensive. *State v. Jarvis*, 160 Wn. App. 111, 118, 246 P.3d 1280 (2011). Spitting on another person without their consent is an unlawful touching and can constitute an assault when it is offensive. *State v. Humphries*, 21 Wn. App. 405, 409, 586 P.2d 130 (1978); *see State v. Jackson*, 145 Wn. App. 814, 821, 187 P.3d 321 (2008); *State v. Hall*, 104 Wn. App. 56, 65-66, 14 P.3d 884 (2000).

2.    ANALYSIS

Kerrigan's and Perez-Soares's testimony and video evidence established that Gueye spit on Kerrigan and that Gueye's saliva hit her in the face. Kerrigan testified that she did not ask Gueye to spit in her face and that she did not provide permission for him to do so. Moreover, the video shows that when Gueye spat on Kerrigan the first time, she exclaimed, "Hey! Whoa!," indicating that she did not consent to the spitting and was offended by it. Ex. 2 at 22 sec. to 26 sec. After Gueye spit on her a second time, Kerrigan wiped the saliva off her face with her hand and arm.

Taking this evidence in the light most favorable to the State, a rational jury could find beyond a reasonable doubt that Gueye's act of spitting in Kerrigan's face was "offensive" and "unlawful force." CP at 29; *see Sweany*, 174 Wn.2d at 914. The jury could reasonably infer that an ordinary person who is not unduly sensitive would consider Gueye's spitting in Kerrigan's face to be offensive. *See Rich*, 184 Wn.2d at 909; *Salinas*, 87 Wn.2d at 123-24; *Villaneuva-Gonzalez*,

180 Wn.2d at 982. And Kerrigan's testimony that she did not consent to the spitting supports that the spitting was with unlawful force. *Jackson*, 145 Wn. App at 821; *Jarvis*, 160 Wn. App. at 118. Accordingly, this sufficiency argument fails. *See Homan*, 181 Wn.2d at 106; *Sweany*, 174 Wn.2d at 914.

## C. SECOND DEGREE CRIMINAL TRESPASS

Gueye next argues that the evidence was insufficient to support the second degree criminal trespass conviction. He argues that the State failed to prove that (1) he knew he was excluded from (a) the bus before he entered the bus and (b) the garage, (2) he knowingly entered property from which he was excluded, and (3) he didn't have time to leave transit property before his arrest. We disagree.

### 1.    LEGAL PRINCIPLES

To convict Gueye of second degree criminal trespass, the State needed to prove, in relevant part, that he (1) knew that it was unlawful to enter or remain on Pierce Transit property and (2) knowingly entered or remained on the property. *See* RCW 9A.52.080(1); *State v. Joseph*, 189 Wn.2d 645, 648, 405 P.3d 993 (2017). Sufficient evidence supports these two elements.

### 2.    ANALYSIS

Gueye frames his sufficiency argument by first identifying two of his actions—his entry onto the bus and his entry into the garage—and arguing that neither individual act constitutes second degree criminal trespass. By analyzing evidence from the record in a piecemeal fashion, Gueye misapplies the sufficiency of the evidence standard of review. *See State v. Goodman*, 150 Wn.2d 774, 783, 83 P.3d 410 (2004). Rather than examining whether isolated facts sufficiently support a conviction, we review the "*evidence as a whole*" in the light most favorable to the State.

7

*Goodman*, 150 Wn.2d at 783 (emphasis added). Sufficient evidence supports that Gueye committed second degree criminal trespass.

    a.    ELEMENT 1: KNOWLEDGE OF UNLAWFUL ENTRY

Gueye argues that the State failed to prove beyond a reasonable doubt that he knew that entry or remaining on Pierce Transit property was unlawful. However, the State presented testimony that Gueye received a written exclusion notice and oral explanation that Gueye was prohibited from being on Pierce Transit property, buses, and at bus stops. Eyewitness Perez-Soares heard law enforcement tell Gueye that he was not "allowed to be on the premises." 3 VTP at 25. Law enforcement also informed Gueye that if he violated the exclusion notice he could be arrested for trespassing, so it is a reasonable inference that Gueye understood that violating the exclusion notice terms was unlawful. Gueye appeared to leave the area after he was told to leave the premises, which further supports that Gueye understood that he was required to leave the transit center and not remain at the bus stop or attempt to board a bus.

Contrary to Gueye's assertions that he first learned he was excluded from the bus when Kerrigan told Gueye he was "denied service," the jury heard testimony that Gueye knew *before* he entered Kerrigan's bus that he was prohibited from entering the bus and remaining on Pierce Transit property in general. Appellant's Opening Br. - Corrected at 13.

In addition, Gueye argues that he did not know he was excluded from the parking garage because it was not adequately posted as being Pierce Transit property from which he was excluded. To support this argument, Gueye relies on former RCW 9A.52.010(5) (2011), which provides requirements for posting trespass notices on unimproved, apparently unused agricultural and public lands. He also relies on RCW 9A.52.090(2), which provides that a person does not commit

trespass when they enter a public land and comply "with all lawful conditions imposed on access to or remaining in the premises." The statutes to which Gueye refers require that public places post only the hours that entry is prohibited for the general public. Former RCW 9A.52.010(5); RCW 9A.52.090(2). The statutes do not impose a requirement that the State post notice to individuals that they are excluded from the public land. *See* former RCW 9A.52.010(); RCW 9A.52.090(2). And although Gueye did not receive notice of his exclusion from a posting, Gueye received a written exclusion notice that he was prohibited from entering or remaining on Pierce Transit property as a whole.

Taking the facts in the light most favorable to the State, a reasonable jury could infer that Gueye knew that he was excluded from Pierce Transit property. *See Sweany*, 174 Wn.2d at 914.

b.    ELEMENT 2:  GUEYE KNOWINGLY ENTERED ONTO PIERCE TRANSIT PROPERTY

Second, Gueye argues that the State failed to prove the second element that he knowingly entered or remained on Pierce Transit property. The record supports that Gueye knowingly entered or remained on transit property. Within 20 minutes after Gueye received the exclusion notice, Gueye returned to the bus stop in the station, cut in line to board Kerrigan's bus, walked onto the bus, and engaged in the altercation in which he spat in her face. After leaving the bus, he remained on Pierce Transit property when he entered the parking garage and sat on a floor of the garage near a Link light rail stop.

Gueye asserts that he did not know that the parking garage connected to the Link station was part of the transit property from which he was excluded, so the State failed to prove that he knowingly entered or remained on transit property when he entered the garage. But as discussed above, we do not examine the evidence in isolation when considering the sufficiency of the

evidence. *Goodman*, 150 Wn.2d at 783. Gueye's entry into the parking garage occurred *after* he returned to the bus stop in the station and entered Kerrigan's bus, so his subsequent entry into the garage is not necessary to support his criminal trespass conviction. Evidence regarding Gueye's subsequent entry into the Pierce Transit parking garage, which was adjacent to the Link light rail station and bus transit center, is merely *additional evidence* that he unlawfully and knowingly remained on Pierce Transit property. The jury, applying its common sense and experience, could reasonably infer that Gueye knowingly remained on Pierce Transit property after he was told to leave. *See Sweany*, 174 Wn.2d at 914; *Rich*, 184 Wn.2d at 906; *Salinas*, 87 Wn.2d at 123-24.

Taking the facts in the light most favorable to the State, the evidence is sufficient to prove that Gueye knew that it was unlawful to enter or remain on Pierce Transit property and he knowingly entered or remained on transit property. *See Sweany*, 174 Wn.2d at 914.

    c.    ADEQUATE TIME

Finally, to support his claim of insufficiency of the evidence, Gueye argues that a reasonable jury could not convict him of trespassing because he did not have adequate time to leave Pierce Transit property before he was arrested. Gueye is correct that the State presented no evidence regarding the size of the Tacoma Dome Station or Gueye's physical ability to leave the station in a timely fashion. But the State presented evidence that Gueye left the area by the bus stop where the exclusion notice was issued and then *returned* to a bus stop in the area within 20 minutes when he entered Kerrigan's bus. This evidence supports the conclusion that Gueye was not in the process of vacating the station on foot, but instead violated the exclusion notice by returning to transit property and entering a bus. Given that he had time to leave the area and then return to it, the jury could reasonably infer that he was not in the process of leaving the premises

but instead unlawfully entering or remaining on it. *See Rich*, 184 Wn.2d at 906; *Salinas*, 87 Wn.2d at 123-24. Moreover, Gueye's presence on an upper floor of the parking garage near the Link station further supports that he did not vacate the premises in a timely fashion despite the opportunity to do so.

Taking the evidence as a whole in the light most favorable to the State, a rational jury could conclude that Gueye committed criminal trespass. *See Homan*, 181 Wn.2d at 106; *Sweany*, 174 Wn.2d at 914.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Gueye argues that he received ineffective assistance of counsel because defense counsel failed to request a lesser-included offense instruction on the misdemeanor "unlawful transit conduct" as an alternative to his third degree assault charge. Appellant's Opening Br. - Corrected at 18. Gueye argues that there was no reasonable tactical basis for defense counsel's "all or nothing" strategy. Appellant's Opening Br. - Corrected at 24. We disagree .

### A. STANDARD OF REVIEW

Ineffective assistance of counsel is a mixed question of law and fact that we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To establish a claim of ineffective assistance of counsel, Gueye must show that (1) defense counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *State v. Grier*, 171 Wn.2d 17, 33-34, 246 P.3d 1260 (2011). A failure to satisfy either prong is fatal to an ineffective assistance of counsel claim. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 784 (1984).

Gueye bears the burden of establishing ineffective assistance of counsel. *Grier*, 171 Wn.2d at 33. We presume that defense counsel's performance was reasonable. *Grier*, 171 Wn.2d at 33. Performance is deficient if it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33. Counsel's conduct is not deficient when it can be characterized as legitimate trial strategy or tactics. *Grier*, 171 Wn.2d at 33. The inclusion or exclusion of lesser-included offense instructions is a tactical decision for which courts provide considerable deference to defense counsel. *Grier*, 171 Wn.2d at 39.

## B. GUEYE NOT ENTITLED TO INSTRUCTION

Gueye's argument that counsel was deficient for failing to request a lesser-included offense instruction relies on the assumption that Gueye was *entitled* to a lesser-included offense instruction. This argument fails.

### 1. LEGAL PRINCIPLES

A lesser-included offense instruction is appropriate if (1) all the elements of the lesser offense are necessary elements of the charged offense (legal prong) and (2) the evidence supports an inference that the lesser crime was committed (factual prong). *Grier*, 171 Wn.2d at 42 (quoting *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978)). When the first prong of the *Workman* test is not satisfied, counsel is not deficient when he fails to request a lesser-included offense instruction. *State v. Red*, 105 Wn. App. 62, 66-67, 18 P.3d 615 (2001).

Individuals commit third degree assault when they assault a person employed as a transit operator or driver by a public transit company who is operating a vehicle occupied by one or more passengers and owned by a transit company. RCW 9A.36.031(1)(b). In contrast, a person is guilty of unlawful transit conduct if a person knowingly spits while on or in a transit vehicle or in or at a transit station, except in appropriate plumbing fixtures in restroom facilities. RCW 9.91.025(1)(e).

2.    ANALYSIS

Under the legal prong of the *Workman* test, unlawful transit conduct is not a lesser-included offense of third degree assault because all the elements of unlawful transit conduct are not necessary elements of third degree assault. S*ee Grier*, 171 Wn.2d at 42. Unlawful transit conduct requires the act of spitting and does not require that there be a human victim or that the spitting make harmful or offensive contact with another person. RCW 9.91.025(1)(e). In contrast, third degree assault requires an "assault," which is an intentional and offensive touching of another person with unlawful force. RCW 9A.36.031(1)(b). Furthermore, unlawful transit conduct may occur only when the offender is "on or in a transit vehicle or in or at a transit station," whereas the offender is not required to be in any particular location to commit third degree assault. RCW 9.91.025(1); RCW 9A.36.031(1)(b).

Because neither element of unlawful transit conduct is a necessary element of third degree assault, unlawful transit conduct is not a lesser-included offense of the charged crime. *Grier*, 171

Wn.2d at 42. As such, defense counsel was not deficient for choosing not to request a lesser-included offense instruction to which Gueye was not entitled. *Grier*, 171 Wn.2d at 43-44; *Red*, 105 Wn. App. at 66-67. Thus, Gueye's ineffective assistance of counsel claim fails.

### C. GUEYE'S AUTHORITY INAPPLICABLE

Gueye relies on three cases to support his ineffective assistance claim: *State v. Ward*,[1] *State v. Smith*,[2] and *State v. Pittman*.[3] These cases applied reasoning that our Supreme Court explicitly rejected in *Grier*. 171 Wn.2d at 35-40. The *Grier* court held that *Ward* and its progeny, which includes Gueye's cited cases, failed to apply the presumption that counsel was effective and failed to apply the *Strickland* test for deficient performance that states counsel is effective if *any* conceivable legitimate tactic supports counsel's conduct. *Grier*, 171 Wn.2d at 35-42.

A Washington Supreme Court decision is binding on all lower courts in the state, so the Supreme Court's *Grier* decision is controlling. *See State v. Mathers*, 193 Wn. App. 913, 923, 376 P.3d 1163, *review denied*, 186 Wn.2d 1015 (2016). To the extent Gueye relies on cases abrogated by *Grier*, Gueye's ineffective assistance argument must fail.

---

[1] 125 Wn. App. 243, 250, 104 P.3d 670 (2004), *abrogated by Grier*, 171 Wn.2d 17.

[2] 154 Wn. App. 272, 223 P.3d 1262 (2009). *Smith* relied on *State v. Pittman*, which was abrogated by *Grier*. *See Smith*, 154 Wn. App. at 278-79 (citing *State v. Pittman*, 134 Wn. App. 376, 166 P.3d 720 (2006), *abrogated by Grier*, 171 Wn.2d 17).

[3] 134 Wn. App. 376.

No. 49624-1-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, P.J.

We concur:

BJORGEN, J.

SUTTON, J.