¶ 27 Thus, under Boguch, the Beauregards have failed to establish proximate causation, an essential element to their negligence, statutory duty, and CPA claims.
III
¶ 28 Riley cross-appeals and contends that the trial court erred when it found that Riley had a duty under RCW 18.86.030(1)(c) to communicate a rental inquiry to the Beauregards. We agree.
¶ 29 We review issues of statutory construction de novo. State v. Evans, 177 Wash.2d 186, 191, 298 P.3d 724 (2013). "When interpreting a statute, our fundamental objective is to determine and give effect to the intent of the legislature." State v. Sweany, 174 Wash.2d 909, 914, 281 P.3d 305 (2012) (citation omitted). The court's analysis begins by looking to the text of the statutory provision, the context in which the provision is found, related provisions, and the statutory scheme as a whole. Sweany, 174 Wash.2d at 914, 281 P.3d 305.
¶ 30 The statutory duty to convey all "written offers, written notices and other written communications" is triggered once a broker is rendering "real estate brokerage services." See RCW 18.86.030(1)(c). As discussed above, the amendment to chapter 18.86 makes clear that "[t]he duties under this chapter are statutory duties and not fiduciary duties. This chapter supersedes the fiduciary *259 duties of an agent to a principal under the common law." RCW 18.86.110.
¶ 31 At issue in this appeal is the duty described in RCW 18.86.030(1)(c), which imposes statutory duties on real estate brokers:
(1) Regardless of whether a broker is an agent, the broker owes to all parties to whom the broker renders real estate brokerage services the following duties, which may not be waived: ...
(c) To present all written offers, written notices and other written communications to and from either party in a timely manner, regardless of whether the property is subject to an existing contract for sale or the buyer is already a party to an existing contract to purchase.
Brokers owe these duties "to all parties whom the broker renders real estate brokerage services." RCW 18.86.030. "Real estate brokerage services" is defined as "the rendering of services for which a real estate license is required under chapter 18.85 RCW." Chapter 18.85, which governs real estate licensure, defines "real estate brokerage services" to mean "any of the following services offered or rendered directly or indirectly to another, or on behalf of another for compensation or the promise or expectation of compensation." RCW 18.85.011(17). Thus, while the statute explains that the duties are not waivable, they are owed when only a broker is acting for "compensation or the promise or expectation of compensation."
¶ 32 To ascertain the scope of Riley's agency we must look to the Listing Agreement to determine the compensation Riley expected to receive for her services. The *833 Listing Agreement defines "sell" to include a "contract to sell; an exchange or contract to exchange; an option to purchase; and/or a lease with option to purchase." "Sell" is used in the commission section of the Listing Agreement as follows:
COMMISSION. If during the Listing Term (a) Seller sells the Property and the buyer does not terminate the agreement prior *260 to closing; or (b) after reasonable exposure of the Property to the market, Firm procures a buyer who is ready, willing, and able to purchase the Property on the terms in this Agreement, Seller will pay ... Firm a commission of 6% of the sales price.... Further, if Seller shall, within six months after the expiration of the Listing Term, sell the Property to any person to whose attention it was brought through the signs, advertising or other action of Firm, or on information secured directly or indirectly from or through Firm, during the Listing Term, Seller will pay Firm the above commission.[3 ]
By the terms of the Listing Agreement, "selling" includes "leasing with option to purchase." Thus, the scope of the Listing Agreement included leasing, but only when coupled with an option to purchase.
¶ 33 In the e-mail Riley received from Williams, the e-mail specifically asked if the Beauregards would be interested in renting their house, as opposed to selling.[4] The e-mail communication does not fall within the "real estate brokerage services" that the Beauregards contracted with Riley because Williams clearly indicated that the interested party only wanted to rent the property. Since Riley's scope of agency was limited to selling the property, Riley was not expecting compensation from renting the property. Therefore Riley did not have a duty to communicate the rental inquiry under RCW18.86.030(1)(c).
*261 ¶ 34 We affirm dismissal of the Beauregards' claims. We reverse the trial court's finding that Riley had a statutory duty to communicate the rental inquiry and breached that duty.[5]
WE CONCUR:
Schindler, J.
Appelwick, C.J.

(Emphasis added.)

The e-mail stated:
Shot in the dark but wondering if your client at 10052 NE 30th Place, Bellevue 98004 might be interested in renting their house as appose [sic] to selling, I have a friend moving from SF in mid June looking for a rental to get acquainted with the area. He and his family are looking in West Bellevue area like Clyde Hill, Medina, Hunts point, Yarrow point and surrounding.
$ 3500/mo is his target monthly2000+ sq/ftHouse2+ bedroomsHe is willing to sweeten the offer by paying cash in full for a year if needed and looking for 1-2 year.

Since we affirm the trial court's grant of summary judgment on causation, we decline to reach Riley's cross-appeal on whether the trial court erred by considering Anderson's expert declaration.