[Nos. 28860-9-III; 28875-7-III.    Division Three.    June 14, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. LEYSA LYNN SWEANY, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. LEAH LYNN SWEANY, *Appellant*.

*David L. Donnan* and *Thomas M. Kummerow* (of *Washington Appellate Project*); and *Susan M. Gasch* (of *Gasch Law Office*), for appellants.

*Andrew K. Miller*, *Prosecuting Attorney*, and *Terry J. Bloor*, *Deputy*, for respondent.

¶1 SIDDOWAY, J. — Washington's criminal code identifies four alternative means by which an individual commits first degree arson, one of which is where he or she "knowingly and maliciously . . . [c]auses a fire or explosion on property valued at ten thousand dollars or more with intent to collect insurance proceeds."[1] Leysa and Leah Sweany's consolidated appeal of their convictions for first degree arson requires us to review whether the State presented sufficient evidence to support the required $10,000 value and, in that connection, to determine whether the value to be proved is fair market value or insured value. We conclude that in the context of the arson statute, the expression "valued at ten thousand dollars or more" refers to the value assigned the property for insurance purposes, whether or not it is (as it should be) a fair reflection of fair market value or replacement value. Because the evidence is sufficient to support the convictions, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Leysa Sweany and her then 23-year-old daughter Leah Sweany[2] lived in a mobile home in Kennewick. Leysa's mother, Juanita Silvers, purchased the home for Leysa and her children in 2001 and leased the lot in the mobile home park where it was located. In 2008, Mrs. Silvers transferred title to the mobile home to Leysa. Leysa thereafter purchased a policy insuring the home for $65,000 effective November 17, 2008, later dropping the coverage to $45,000 to reduce the premium cost.

¶3 The term of Mrs. Silvers' written lease for her lot in the mobile home park had expired prior to the time she transferred title to the home to Leysa. Continued tenancy was on a month-to-month basis. With the transfer of ownership, Leysa was required to apply for her own lease, which was declined. She received a notice of eviction from the

---

[1] RCW 9A.48.020(1)(d).

[2] Given the common last name, we refer to Leysa and Leah by their first names. We mean no disrespect.

mobile home park on December 9, 2008 and reached agreement with management of the park that she would have until December 31 to move. The deadline passed without Leysa's moving the mobile home, however; the cost to move the mobile home proved more than she could afford.

¶4 On the early afternoon of January 7, 2009, neighbors noticed smoke coming from Leysa's mobile home and summoned fire fighters, who extinguished a fire that was confined to the island in the kitchen and stovetop area. Insurance and police investigations followed, revealing that Leysa's financial situation had deteriorated in the months leading up to the fire, and that Leah had spoken with friends about her and her mother's plans to cause an "accidental" fire in the home for the insurance proceeds. Both Leysa and Leah were charged with first degree arson.

¶5 At trial, the State presented evidence in support of two alternative means by which an individual commits first degree arson; first, if "he or she knowingly and maliciously . . . [c]auses a fire or explosion which damages a dwelling" and second, if "he or she knowingly and maliciously . . . [c]auses a fire or explosion on property valued at ten thousand dollars or more with intent to collect insurance." RCW 9A.48.020(1)(b), (d). The jury was instructed that "[t]o return a verdict of guilty, the jury need not be unanimous as to which of [the alternatives] has been proved beyond a reasonable doubt, as long as each juror finds that at least one alternative has been proved beyond a reasonable doubt." Clerk's Papers at 38 (Instruction 13).

¶6 Leysa and Leah were convicted. They appeal, contending that the State failed to prove an essential element—a greater-than-$10,000 value for the mobile home—beyond a reasonable doubt.

## ANALYSIS

### I

¶7 A defendant's right to require that the State prove each essential element of a crime beyond a reasonable

doubt is a due process right guaranteed under the United States Constitution. U.S. Const. amends. V, XIV; *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State v. Lively*, 130 Wn.2d 1, 11, 921 P.2d 1035 (1996). The State argues as a threshold matter that we should decline review of Leysa's and Leah's challenge to the sufficiency of the evidence because they did not contest a $10,000 value for the property at trial, nor did they object to the jury instruction that included insurance-motivated arson as a basis for conviction. Although the State concedes that a challenge to the sufficiency of the evidence raises constitutional error, it argues that the alleged error is not "manifest" constitutional error that can be raised for the first time on appeal.

¶8 The State's argument overlooks the longstanding maxim that a criminal defendant may always challenge the sufficiency of the evidence supporting a conviction for the first time on appeal. *State v. Hickman*, 135 Wn.2d 97, 103 n.3, 954 P.2d 900 (1998) (noting that "[a]ppeal is the first time sufficiency of evidence may realistically be raised"). RAP 2.5(a) includes "failure to establish facts upon which relief can be granted" as an express exception from its general prohibition against raising new issues on appeal; an exception separate and in addition to the exception under the rule for constitutional error that is "manifest." *Roberson v. Perez*, 156 Wn.2d 33, 40, 123 P.3d 844 (2005). A defendant challenging the sufficiency of the evidence is not obliged to demonstrate that the due process violation is "manifest."

¶9 The State also contends that failure to contest a $10,000 value below should foreclose Leysa's and Leah's challenge on the basis of invited error or judicial estoppel. Neither applies. The invited error doctrine "prohibits a party from setting up an error at trial and then complaining of it on appeal." *State v. Pam*, 101 Wn.2d 507, 511, 680 P.2d 762 (1984), *overruled on other grounds by State v. Olson*, 126 Wn.2d 315, 893 P.2d 629 (1995). Judicial estoppel prevents a party from taking inconsistent factual positions

from one proceeding to the next but does not preclude inconsistent legal positions. *Anfinson v. FedEx Ground Package Sys., Inc.*, 159 Wn. App. 35, 61, 244 P.3d 32 (2010), *petition for review filed*, No. 85949-3 (Wash. Apr. 29, 2011). Leysa and Leah did not set up error when they accepted the trial court's jury instructions, nor do they dispute the instructions now. They also have not taken an inconsistent factual position on appeal; they do not dispute any facts established below. While Leysa testified at trial that the mobile home might be worth "[a] little bit more [than $10,000] maybe[,] because of my interior," the truth of that evidence is admitted; it is the sufficiency of that and other evidence that is challenged. Report of Proceedings (RP) at 475. The issues raised on appeal are legal in nature and do not implicate the doctrine of judicial estoppel.[3]

## II

¶10 Leysa and Leah concede that substantial evidence supports conviction for the first degree arson alternative provided by RCW 9A.48.020(1)(b), that the fire "damage[d] a dwelling." They also concede that substantial evidence supports finding that the fire was set with the intent to collect insurance proceeds. But they argue that substantial evidence does not support the requirement of RCW 9A-.48.020(1)(d) that the fire was caused on "property valued at ten thousand dollars or more." In advancing this argument, they contend that "value" must mean the fair market value of the property. The State responds that the term should be interpreted to mean the insured value of the property. The State also argues that substantial evidence supports the "value" element regardless of which interpretation we adopt.

---

[3] Leysa's and Leah's arguments pertain to statutory construction and substantial evidence. Questions regarding statutory construction are clearly matters of law. *United States v. Hoffman*, 154 Wn.2d 730, 737, 116 P.3d 999 (2005). Whether substantial evidence exists is also a question of law for the court. *State v. Hutton*, 7 Wn. App. 726, 728, 502 P.2d 1037 (1972) (citing *State v. Zamora*, 6 Wn. App. 130, 133, 491 P.2d 1342 (1971), *review denied*, 80 Wn.2d 1006 (1972)).

¶11 A fundamental protection accorded to a criminal defendant is that a jury of his or her peers must unanimously agree on guilt. *State v. Stephens*, 93 Wn.2d 186, 607 P.2d 304 (1980). "It is well established, however, that when the crime charged can be committed by more than one means, the defendant does not have a right to a unanimous jury determination as to the alleged means used to carry out the charged crime or crimes should the jury be instructed on more than one of those means." *State v. Smith*, 159 Wn.2d 778, 783, 154 P.3d 873 (2007). However, "in order to safeguard the defendant's constitutional right to a unanimous verdict as to the alleged crime, substantial evidence of each of the relied-on alternative means must be presented." *Id.*[4]

¶12 Leysa's and Leah's argument requires us to answer two questions: (1) what "value" is considered in applying the first degree arson statute, RCW 9A.48.020, and (2) with that value in mind, does substantial evidence support finding a value greater than $10,000?

### III

¶13 We apply de novo review to questions of statutory construction. *City of Spokane v. Spokane County*, 158 Wn.2d 661, 672-73, 146 P.3d 893 (2006). When interpreting a statute, the court's fundamental objective is to ascertain and carry out the legislature's intent. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005). To determine that intent, we first look to the language of the statute. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). If the plain language of the statute is clear and unambiguous, we must give effect to the language as an

---

[4] There is no bright-line rule by which the courts can determine whether the legislature intended to provide alternate means of committing a particular crime. *State v. Peterson*, 168 Wn.2d 763, 769, 230 P.3d 588 (2010) (quoting *State v. Klimes*, 117 Wn. App. 758, 769, 73 P.3d 416 (2003)). The first degree arson statute, RCW 9A.48.020, has long been recognized to specify alternative means by which a person may commit the crime, however. *State v. Flowers*, 30 Wn. App. 718, 722-23, 637 P.2d 1009 (1981), *review denied*, 97 Wn.2d 1024 (1982).

expression of legislative intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).

¶14  In determining the plain meaning of a provision, we look to the text of the statutory provision in question as well as "the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Jacobs*, 154 Wn.2d at 600.

¶15  Leysa and Leah argue that while the term "value" is not defined in chapter 9A.48 RCW, it is defined elsewhere in the criminal code. RCW 9A.56.010 provides a definition for "value" in the context of our theft and robbery statutes. It defines the term as "the market value of the property . . . at the time and in the approximate area of the criminal act." RCW 9A.56.010(18)(a). "Market value" has been determined to mean " 'the price which a well-informed buyer would pay to a well-informed seller, where neither is obliged to enter into the transaction.' " *State v. Kleist*, 126 Wn.2d 432, 435, 895 P.2d 398 (1995) (quoting *State v. Clark*, 13 Wn. App. 782, 787, 537 P.2d 820 (1975)). "Value," thus defined, is an inherent, objective attribute of the property.

¶16  However, the arson statute does not use the noun "value"; it speaks of property "valued at" $10,000 or more. The plain and ordinary meaning of "valued at" is of a value that is not inherent or objective but that is, or has been, assigned. In the context of insurance-motivated arson, where criminal liability attaches if fire is caused on "property valued at ten thousand dollars or more with intent to collect insurance," the logical assigned value is the insured value: the amount that the arsonist-insured presumably hopes to collect. Assuming a perfect underwriting process, the insured value provided by a policy will be the actual cash value (fair value) or a projected replacement value of the insured's interest in the property; a standard fire policy written in Washington insures on that basis and over-insurance is prohibited. WAC 284-20-010(3); *Hess v. N. Pac. Ins. Co.*, 122 Wn.2d 180, 183, 859 P.2d 586 (1993); RCW 48.27.010, .020. Where a disparity exists between actual cash value or replacement value, on the one hand, and

insured value, on the other, the purpose of the statutory scheme is better served by imposing criminal liability based on the amount of insurance proceeds that the arsonist hopes to collect than on the actual value of the property; in other words, by imposing criminal liability on the owner who sets fire to a $9,000 mobile home in hopes of collecting on a $45,000 claim rather than on the unlikely owner who sets fire to a $45,000 mobile home in hopes of collecting on a policy insuring the home for $9,000.[5]

## IV

¶17 Given that construction of RCW 9A.48.020(1)(d), Leysa and Leah have no basis for a sufficiency challenge. The evidence that the insured value of the mobile home at the time of the fire was at least $45,000 was clear and undisputed. Their argument on appeal proceeds exclusively from what they argue was the absence of evidence of a greater-than-$10,000 fair market value.

¶18 In that connection, however, and as an alternative basis for affirming the trial court, review reveals that while the sufficiency of the evidence to establish a greater-than-$10,000 fair market value presents a much closer question, the evidence was nonetheless sufficient under that meaning of "value" as well.

¶19 When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the elements of the charged crime beyond a reasonable doubt. *State v. Brown*, 162 Wn.2d 422, 428, 173 P.3d 245 (2007). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "Substantial evidence" means evidence in the record of a sufficient quantity to persuade a fair-minded, rational person of

---

[5] This is so even recognizing that replacement coverage could pay out somewhat more than the insured value should replacement cost exceed the insured amount.

thetruth of the finding. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

¶20 It is not essential that there be direct evidence of value; reasonable inferences from substantial evidence may suffice. *State v. Melrose*, 2 Wn. App. 824, 831, 470 P.2d 552 (1970); *see also State v. Liles*, 11 Wn. App. 166, 171, 521 P.2d 973, *review denied*, 84 Wn.2d 1005 (1974). When substantial evidence is present, the drawing of reasonable inferences therefrom and the doing of some conjecturing on the basis of such evidence is permissible and acceptable. *Melrose*, 2 Wn. App. at 831 (citing *Lavender v. Kurn*, 327 U.S. 645, 66 S. Ct. 740, 90 L. Ed. 916 (1946)).

¶21 Mrs. Silvers testified that she paid $10,500 for the mobile home in 2001, having talked her seller down from an asking price of $15,000. The price paid for an item of property, if not too remote in time, is proper evidence of its value. *Id.* Due allowance can be made by the jury for changes in the condition of the property that affect its market value. *Id.* The manager of the mobile home park testified to familiarity with the market price for mobile homes and that a pre-1995 single-wide mobile home in the park could sell for between $6,000 and $12,000.[6] When Leysa was asked if she thought the home was worth less than $10,000, she replied that it was worth "[a] little bit more maybe[,] because of my interior." RP at 475. Finally, although the property's insured value was characterized by the State as inflated and therefore evidence of insurance-motivated arson, insured value is intended to reflect actual value and the State presented evidence that Leysa had insured the home for $65,000 initially, and later $45,000.

¶22 Leysa and Leah nonetheless point to evidence that the county's assessed value for the mobile home in 2009 was $8,350 and that the interior of the home was in poor condition prior to the fire and had graffiti on the walls, and to the State's argument, from these facts and the $10,500.

---

[6] Fire fighter Rob Buckley testified that the mobile home in question is a single-wide.

purchase price in 2001, that the home was worth only a fraction of its insured value. Such argument goes to the weight of the evidence, not its sufficiency. When viewed in the light most favorable to the State, the record contains sufficient evidence from which a jury could reasonably conclude that the fair market and insured values of the mobile home were both $10,000 or more at the time of the fire.

¶23 We affirm.

KULIK, C.J., and BROWN, J., concur.

Review granted at 172 Wn.2d 1020 (2011).