IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78265-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ALAN JAMES SINCLAIR, II, | ) | |
| | ) | |
| Appellant. | ) | FILED: October 28, 2019 |
| | ) | |

ANDRUS, J. — A jury convicted Alan James Sinclair, II, of raping his young teenage granddaughter, I.S. James Zesati, I.S.'s stepfather, was subsequently arrested and convicted for raping I.S. Sinclair sought a new trial based on the newly discovered evidence that Zesati had abused I.S. at the same time Sinclair was molesting her. The trial court denied this motion, concluding that the evidence would not have changed the outcome of Sinclair's trial. We agree and affirm.

## FACTS

A jury found Sinclair guilty of sexually abusing his granddaughter, I.S. We affirmed his convictions of two counts of second degree rape of a child, two counts of third degree child molestation, and one count of communicating with a minor for immoral purposes. State v. Sinclair, 192 Wn. App. 380, 367 P.3d 612, review denied, 185 Wn.2d 1034, 377 P.3d 733 (2016).

James Zesati, I.S.'s stepfather, was also convicted of sexually abusing I.S., and the details of his crimes are set out in our decision affirming his convictions. State v. Zesati, No. 75716-4-I (Wash. Ct. App. Aug. 6, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/757164.pdf, review denied, 192 Wn.2d 1007, 430 P.3d 242 (2018).

When Sinclair learned of Zesati's crimes, he moved to vacate his judgment, under CrR 7.8(b)(5), and for a new trial under CrR 7.5(a)(3). At trial, Sinclair had admitted his guilt as to the charges of child molestation and communicating with a minor for immoral purposes. Sinclair, 192 Wn. App. at 384-85. The only charges Sinclair disputed were the two counts of second degree child rape, arguing that the State had presented insufficient evidence to prove that he had engaged in sexual intercourse with I.S. before her 14th birthday.[1] Id. In his motion for a new trial, Sinclair argued that had he known of Zesati's abuse of I.S., he would not have conceded guilt to any of the charges. Instead, he would have taken the stand to explain that I.S.'s allegations against him were false and stemmed from a poor relationship with I.S.'s mother, January, and from Zesati seeking to hide his sexual relationship with I.S.

In addition, Sinclair contends that he would have taken the stand to explain away sexually explicit images of I.S. found on Sinclair's computer, camera, and cell phone. Sinclair asserts he would have testified that I.S. had unsupervised and

---

[1] I.S.'s age when raped by Sinclair was relevant to the severity of Sinclair's crimes. Rape of a child in the second degree is a class A felony and requires proof of "sexual intercourse" with a child who is at least 12 but less than 14 years old. RCW 9A.44.076. A defendant convicted of second degree child rape is subject to an indeterminate sentence under RCW 9.94A.507, with a maximum sentence of life in prison. RCW 9A.20.021(1)(a).

frequent access to his many electronic devices, including at least two times when he suspected that I.S. was engaging in sexual activity with someone else. Sinclair conceded that this evidence was available at the time of his trial, but he had no evidence that I.S. was sexually active with anyone else and his testimony would not have been credible until Zesati's relationship with I.S. was uncovered.

The State countered that the trial outcome would have been the same because its evidence against Sinclair was overwhelming—I.S. had testified consistently that Sinclair had abused her sexually for years, the State had photographic evidence of Sinclair engaging in sex with I.S., and the State had a voice recording of Sinclair captured on January's cell phone in which he was overheard making sexually explicit statements to I.S. Additionally, Zesati's abuse differed from Sinclair's abuse, both in location and manner.

The trial court denied Sinclair's motion. It based its ruling on the fact that I.S. had not recanted and that Sinclair's exculpatory explanations for the voice mail and photos were known at trial and could have been presented without the existence of another named abuser. It concluded that "having presided over the trial, the [c]ourt is firmly convinced that the new evidence would not probably have changed the result of the trial and that the proffered evidence would have been cumulative or impeaching at best."

Sinclair appeals.

## ANALYSIS

The State argues Sinclair is judicially estopped from retracting the prior admissions that he sexually abused I.S. Judicial estoppel prevents a party from

taking inconsistent factual positions from one proceeding to the next. State v. Sweany, 162 Wn. App. 223, 228-29, 256 P.3d 1230 (2011), aff'd, 174 Wn.2d 909, 281 P.3d 305 (2012). The State must establish (1) that Sinclair's current factual defense is clearly inconsistent with his earlier defense, (2) that accepting the new defense would create the perception that the trial court was misled, and (3) that Sinclair would gain an unfair advantage from the change in his defense. State v. Wilkins, 200 Wn. App. 794, 803-04, 403 P.3d 890 (2017). The doctrine should apply only when the inconsistent position first asserted was successfully maintained and when the party claiming estoppel was misled into changing its position. See Markley v. Markley, 31 Wn.2d 605, 614-15, 198 P.2d 486 (1948).

Sinclair's current argument—that, if granted a new trial, he would deny all sexual contact with I.S.—is clearly inconsistent with his defense at trial. In closing argument, Sinclair's attorney told the jury:

> Convict Mr. Sinclair of the crimes the government has proven. Convict him of child molestation in the third degree. Convict him of communicating with a minor for immoral purposes.

He also admitted that Sinclair had engaged in sexual intercourse with I.S., but denied that it occurred before she turned 14:

> Folks, there was sexual intercourse between Mr. Sinclair and [I.S.]. But as I said at the beginning of this case, [the question] is whether there was sexual intercourse before July 9, 2012[,] when [I.S.] turned 14.

Although Sinclair's current theory is inconsistent with his trial admissions, Sinclair did not prevail at trial, and the State—the party claiming estoppel—was not misled by Sinclair's admissions and did not change its legal position in reliance on his admissions. Because Sinclair's admissions of sexual abuse did not benefit

him, and any assertion of inconsistent facts caused no prejudice to the State, we conclude that judicial estoppel does not apply. See State v. Hamilton, 179 Wn. App. 870, 887, 320 P.3d 142 (2014) (defendant not estopped from claiming on appeal that she had privacy interest in purse searched by police after denying any ownership of purse at trial).

Turning to the merits, Sinclair argues the trial court erred in denying his motion for a new trial. Except where questions of law are involved, a trial judge has broad discretion in deciding motions for new trial. State v. Williams, 96 Wn.2d 215, 221, 634 P.2d 868 (1981). "The exercise of that discretion will not be disturbed on appeal absent an abuse of discretion." Id. The superior court abuses its discretion only when its decision is manifestly unreasonable, based on untenable grounds, or based on untenable reasons. State v. Scott, 150 Wn. App. 281, 290, 207 P.3d 495 (2009); see also State v. Downing, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004).

A new trial may be granted based on newly discovered evidence only if the moving party demonstrates that the evidence (1) will probably change the result of the trial, (2) was discovered since the trial, (3) could not have been discovered before trial by the exercise of due diligence, (4) is material, and (5) is not merely cumulative or impeaching. Williams, 96 Wn.2d at 222-23; see also CrR 7.5(a)(3). The only questions in this appeal are whether the newly discovered evidence is material, or merely cumulative or impeaching, and whether it would probably change the result of the trial.

A. Materiality

Relying on California v. Trombetta, 467 U.S. 479, 488 & n.8, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984), Sinclair argues that the newly discovered evidence is material because it would have altered his defense. But Trombetta involved the scope of the State's duty to preserve potentially exculpatory evidence under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). In State v. Mullen, 171 Wn.2d 881, 259 P.3d 158 (2011), our Supreme Court expressly recognized that the Brady materiality standard is different than the materiality standard set out in CrR 7.5(a)(3), id. at 905-06, because Brady does not require a defendant to demonstrate that "the evidence if disclosed probably would have resulted in acquittal," id. at 894 (quoting United States v. Bagley, 473 U.S. 667, 680, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985)); see also Kyles v. Whitley, 514 U.S. 419, 433-34, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995). We decline to apply the materiality standard advanced by Sinclair.

Instead, when evaluating newly discovered evidence on a CrR 7.5(a)(3) motion, the evidence is material only "if it strongly indicates that the defendant did not commit the crime." State v. Gassman, 160 Wn. App. 600, 611, 248 P.3d 155 (2011); see also State v. Hawkins, 181 Wn.2d 170, 180, 332 P.3d 408 (2014) (evidence was material because it would have allowed defendant to argue that someone planted stolen property on defendant's property).

The trial court summarized the newly discovered evidence, which Sinclair does not challenge: Zesati began abusing I.S. when she was a freshman in high

-6-

school[2] and raped her on multiple occasions over a six-month period in the family's living room, I.S.'s bedroom, or the master bedroom that Zesati shared with I.S.'s mother. Unlike Sinclair, Zesati did not request videos or photographs of I.S. Zesati stopped raping I.S. when Sinclair was investigated for child rape but began again after Sinclair was sent to prison. I.S. testified in Zesati's trial and admitted that Sinclair had sexually abused her.

Based on this evidence, Sinclair contends that he could have presented an "other suspect" defense. "In the classic other suspects case, the defendant blames the specific crime for which he has been charged on someone else." State v. Hawkins, 157 Wn. App. 739, 751, 238 P.3d 1226 (2010). "The standard for relevance of other suspect evidence is whether there is evidence tending to connect someone other than the defendant with the crime." State v. Franklin, 180 Wn.2d 371, 381, 325 P.3d 159 (2014) (quotations and citations omitted). Some combination of facts or circumstances must point to a nonspeculative link between the other suspect and the specific crime charged. Id. This link is missing here.

At trial, I.S. described specific incidents of sexual molestation and rape that occurred in Sinclair's basement computer room, his truck, and her house. She described his forcing her to engage in oral sex on multiple occasions and his taking photos of her while this occurred. She has never recanted this version of events.

The State presented sexually explicit photos and videos that had been recovered from electronics seized from Sinclair's computer, an external hard drive,

---

[2] Zesati was convicted of rape of a child in the third degree because I.S. was over the age of 14 when the rapes first occurred. Zesati, No. 75716-4-I, slip op. at 1, 8-9.

and media cards from several cameras. Law enforcement also found photos of I.S. engaging in sexual acts taken in Sinclair's computer room, and in his truck, identifiable by its distinctive seat covers. They had photos of Sinclair's blue jeans and white tennis shoes—visible in the recovered photos and video. The items or locations depicted in the photos corroborated I.S.'s testimony that Sinclair had taken the photos.

Despite this evidence, Sinclair contends the evidence of Zesati's abuse is exculpatory because it could rebut the inference that Sinclair took the sexually explicit photographs of I.S., providing a link between Zesati and the specific crimes with which Sinclair was charged. Relying on State v. Kilgore, 107 Wn. App. 160, 26 P.3d 308 (2001), and State v. Carver, 37 Wn. App. 122, 678 P.2d 842 (1984), he argues that evidence of another abuser is material as a matter of law. We disagree.

In Kilgore, the defendant was charged with first degree child rape of a 10-year-old girl. 107 Wn. App. at 166. A nurse practitioner examined the child and testified that the condition of the child's hymen suggested abuse and was consistent with the child's version of events. Id. at 170. The State sought to exclude evidence that the child had been sexually abused by others, but Kilgore argued the evidence that another individual had pleaded guilty to digitally penetrating the child was relevant to rebut the assertion that Kilgore's actions led to the nurse practitioner's diagnosis. Id. at 178. The court reversed the conviction based on the exclusion of this evidence, reasoning that the diagnosis was relevant to rebut the State's allegation that Kilgore had penetrated the child. Id. at 178-79,

- 8 -

190. Because Kilgore's evidence that another individual had digitally penetrated the child could have been the cause of the nurse practitioner's physical finding, and exculpated Kilgore, it was relevant. Id. at 178-79.

But Kilgore did not arise in the context of a post-trial motion for a new trial. The test for relevance is not the same as the test for materiality. Under Gassman, the newly discovered evidence must "strongly indicate" Sinclair did not commit child rape or molestation. Here, the fact that Zesati raped I.S. does not lead to the conclusion that Sinclair did not.

Nevertheless, Sinclair claims that the photos and video could still provide the link to support his "other suspect" theory. He points out that all of the photos and videos introduced at trial were taken after I.S.'s 14th birthday and could have depicted I.S. with Zesati, rather than with Sinclair. If there were evidence to link Zesati and the photos and video, the newly discovered evidence could be exculpatory. The problem, however, is that there is no evidence that Zesati had access to Sinclair's computer, camera, or cell phone, no evidence Zesati was ever in Sinclair's computer room or truck at the same time as I.S., and no evidence Zesati ever forced I.S. to pose for photos. Any suggestion that Zesati took the photos of I.S. is pure speculation and insufficient to provide the necessary link to exculpate Sinclair.

Carver is also distinguishable. In that case, the defendant appealed a conviction for indecent liberties and second degree statutory rape. 37 Wn. App. at 123. He claimed the trial court erred in excluding evidence that the victims, his two stepdaughters, had suffered similar sexual abuse by their grandfather. Id. The

court deemed the evidence relevant to Carver's defense because it rebutted the inference that the victims could describe the alleged sexual acts only if they had been abused by Carver. Id. at 124. "Without the evidence the jury logically could draw the inference that [the victims] were conversant with such things only because [the] defendant was guilty as charged." Id. The court also held that the trial court erred in denying Carver the opportunity to cross-examine one of the girls regarding a prior statement that she had been abused only by her grandfather. Id. at 125. It held that the statement that only her grandfather had abused her was inconsistent with her trial testimony that Carver had abused her and, therefore, the evidence was admissible under ER 613 as impeachment evidence. Id.

In this case, as in Carver, the evidence of Zesati's abuse could have been admissible to rebut an inference that I.S.'s familiarity with the alleged sexual acts had to come from Sinclair, when that knowledge could have resulted from Zesati's abuse. But to be materially exculpatory, rather than merely relevant, there needs to be some evidence linking Zesati to the sexual abuse I.S. endured at the time she gained this familiarity. The fact that Zesati raped I.S. after she turned 14 would not rebut any such inference because Sinclair forced I.S. into engaging in sex between the ages of 11 and 13. As the State persuasively argued, "although Zesati is properly considered a different suspect in different crimes, he is not an other suspect as to these crimes." (Emphasis omitted.)

Also like Carver, I.S. had denied in a pretrial interview having had sex with anyone other than Sinclair. Evidence that I.S. was being abused by Zesati would have been admissible at trial to impeach her credibility. But newly discovered

evidence that has impeachment value only is not material and not a basis for granting a new trial. Williams, 96 Wn.2d at 222-23.

Because the newly discovered evidence does not exculpate Sinclair, it is not material and does not warrant a new trial.

B. Probability of Different Outcome

Even if the evidence were material, we cannot conclude it would have changed the outcome of Sinclair's trial. Sinclair must show that the outcome would probably change, not just possibly change. Gassman, 160 Wn. App at 609; see also In re Pers. Restraint of Fero, 190 Wn.2d 1, 18, 409 P.3d 214 (2018) (citing Gassman for newly discovered evidence standard). "When considering whether newly discovered evidence will probably change the trial's outcome, the trial court considers the credibility, significance, and cogency of the proffered evidence." Gassman, 160 Wn. App. at 609. The "trial court may utilize the knowledge that it gained from presiding at the trial." State v. Barry, 25 Wn. App. 751, 758-59, 611 P.2d 1262 (1980). The trial judge who has seen and heard the witnesses is in a better position to evaluate and adjudge the newly discovered evidence than this court can "'from a cold, printed record.'" State v. Moran, 181 Wn. App. 316, 325, 324 P.3d 808 (2014) (quoting State v. Wilson, 71 Wn.2d 895, 899, 431 P.2d 221 (1967)).

The trial court conducted the appropriate analysis based on its knowledge of the trial evidence and assessment of the witnesses' credibility. It concluded:

> Given the wealth of testimony and physical evidence presented against Sinclair, his claim that he might have changed his theory of defense or offered testimony given the new evidence does not persuade this [c]ourt that the results would probably have

changed. Furthermore, evidence of simultaneous abuse by the victim's stepfather is merely impeaching. Sinclair asserts that the victim might have been confused between abusers but the testimony given by the victim in both trials clearly distinguishes the frequency and sexual abuse by Sinclair and Zesati.

. . . [H]aving presided over the trial, the [c]ourt is firmly convinced that the new evidence would not probably have changed the result of the trial and that the proffered evidence would have been cumulative or impeaching at best.

Again, Sinclair argues that the evidence of Zesati's abuse of I.S. would have led him to change his entire defense strategy. He contends he would have taken the stand to testify that he had no sexual contact with I.S., that I.S. had access to all of his electronic equipment and likely put the photos on his computer and cell phone without his knowledge, and that the male depicted in the photos was not him. But when determining whether newly discovered evidence would probably change the result of trial, we do not consider what effect that evidence may have on the defendant's case; instead, we weigh the newly discovered evidence against the strength of the State's case. In re Pers. Restraint of Faircloth, 177 Wn. App. 161, 167-68, 311 P.3d 47 (2013); see also Fero, 190 Wn.2d at 18 ("[S]trengthening the defense's trial theory is not the standard for newly discovered evidence.").

Here, the State's evidence against Sinclair was overwhelming, and the evidence of Zesati's crimes do not undercut the strength of that evidence. At best, the evidence would allow Sinclair to suggest that I.S. fabricated the entire series of events and somehow set him up by uploading sexually explicit photos of her onto every one of his electronic devices, SD cards, and cell phone. But in light of the corroborating evidence, this defense theory not only seems far-fetched but one

highly unlikely to be accepted by the jury. Thus, Sinclair has not established that the trial outcome would probably change.

Sinclair also argues that the evidence would have bolstered his argument that I.S. was confused as to when Sinclair abused her, leading to reasonable doubt as to whether any rape occurred before I.S. turned 14. But if Sinclair used the newly discovered evidence to support his original trial strategy that he did not rape I.S. until after her 14th birthday, the newly discovered evidence would do nothing more than impeach I.S.'s testimony. "Impeachment evidence" refers to "[e]vidence used to undermine a witness's credibility." BLACK'S LAW DICTIONARY 700 (11th ed. 2019). Impeachment evidence typically tests a witness's ability to perceive or recall matters, highlights defects in a witness's character, or underscores a bias that may lead the witness to distort his or her testimony, either consciously or unconsciously. ROGER PARK & TIM LININGER, THE NEW WIGMORE: A TREATISE ON EVIDENCE: IMPEACHMENT AND REHABILITATION § 2.1, at 65 (2012). Substantive evidence conveying a different story is not impeachment evidence because it does not directly attack a witness's credibility. Id. § 2.1.5.

While Sinclair's testimony that the rapes did not occur would be substantive because it would convey a different story, his testimony is not the "newly discovered evidence" at issue here. He could have taken the stand to provide this testimony at trial. The newly discovered evidence that I.S. was raped by Zesati would have been merely impeaching because Sinclair would have used it, not as substantive evidence to challenge the fact that certain events occurred, but to test I.S.'s recollection of when those events occurred.

Lastly, Sinclair argued that because the photographic evidence post-dated I.S.'s 14th birthday, I.S. could have been confused as to which abuser did what to her and when. But the fact that the photos and video post-dated I.S.'s 14th birthday was known to Sinclair at trial, and his counsel repeatedly challenged I.S.'s recollection of dates and her credibility in testifying that certain events occurred before she turned 14. And the jury still found Sinclair guilty as charged. Furthermore, the trial court explicitly rejected Sinclair's contention that I.S. may have been confused between her abusers because "the victim in both trials clearly distinguishes the frequency and the sexual abuse by Sinclair and Zesati." The record supports the trial court's findings.

The trial court in this case had the opportunity to observe the demeanor and credibility of the witnesses at trial and to view the photographic and video evidence. The trial court properly evaluated the strength of the State's evidence as well as the credibility, significance, and cogency of the proffered new evidence. The trial court's ruling was based on well-articulated, logical reasons. Its decision was not manifestly unreasonable or based on untenable grounds or based on untenable reasons. We find no abuse of discretion.[3]

---

[3] Because we conclude that Sinclair is not entitled to a new trial, we need not revisit our previous conclusion that admission of the pocket-dial voice mail on January's cell phone was harmless error. Sinclair, 192 Wn. App. at 384-85.

No. 78265-7-I/15

Affirmed.

WE CONCUR:

_____                    _____
                                            Andrus, J.

_____                    _____
                                            Smith, J.

- 15 -