

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38505-1-III |
| Respondent, | ) | (Consol. with |
| | ) | No. 38506-0-III) |
| v. | ) | |
| | ) | |
| CHRISTIAN EDWARD WHITE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Christian White challenges his convictions for attempting to elude a pursuing police vehicle and hit and run (38505-1). He also challenges his conviction and sentence for felony violation of a no-contact order (38506-0). The two cases were consolidated on appeal. Through his attorney, White argues that the prosecutor committed misconduct during closing argument on the driving charges (38505-1) by arguing facts not in evidence and by arguing that the jury had to choose between two competing versions of events. White also argues that the sentence imposed on the felony violation of a no-contact order (38506-0) exceeded the statutory maximum. In his statement of additional grounds (SAG), White raises other arguments that cannot be decided on this record, were not preserved, or lack merit.

In case 38505-1-III, we agree that the prosecutor's comments were improper, but we hold that the improper comments do not amount to reversible error and affirm White's convictions. In case 38506-0-III, we reject White's challenges to his conviction raised in his SAG but accept the State's concession that White's sentence exceeds the statutory maximum and remand for resentencing.

BACKGROUND

*Attempting to Elude and Hit and Run (No. 38505-1-III)*

Officer Bill Lane was responding to a burglary call when he came up behind a pickup truck driving at a slow rate of speed. Officer Lane activated his emergency lights so the vehicle would yield to the shoulder and he could respond to the burglary. The truck immediately accelerated to a rate of speed over the speed limit veering in and out of its lane. Officer Lane then pursued the vehicle. The vehicle eventually collided with a parked vehicle.

The driver exited the vehicle and fled on foot. Officer Lane observed no one in the vehicle besides the driver. A search ensued for the driver, and police detained White a few blocks from the crash site.

The State charged White with attempting to elude a pursuing police vehicle and hit and run. Several of White's pretrial hearings were held via Zoom, and White personally objected to this on multiple occasions. He argued that the Zoom hearings violated his

2

right to defend and appear in person. White also stated at one point during his objection, "I can't talk to my lawyer for some reason." Rep. of Proc. (RP) at 111.

White also complained during the proceedings that he had not seen the bodycam footage or any of the other footage from the chase. The trial court recommended he speak with defense counsel.

The case proceeded to a jury trial. Officer Miguel Ruiz testified that he came across White walking along a street in the area of the incident. He described White as sweating profusely like he had just slowed from a run and not wearing a jacket, hat, or gloves even though it was a cold night. Officer Ruiz also said that White's hand was bleeding.

Officer Ruiz's testimony also revealed the existence of "dashcam" footage of which neither party had previously been aware. As a result, defense counsel initially made a motion for a mistrial based on newly discovered evidence but later withdrew this motion.

In the middle of trial, White complained of being unable to see certain jurors at times because of the State's displays. The trial court informed White that if he had issues with visibility, he needed to promptly inform his attorney so the trial court could make adjustments. The trial court also asked the jurors if any of them had their view of White blocked by the displays, and none of them responded affirmatively.

White's niece testified on his behalf. She said that she lived in Wenatchee, and on the day of the incident, White had come over to her house but then left later in the day. The niece also testified that she did not know where White lived but he was planning on staying with her that evening. She said White frequently stayed at her house and had his own room there where he could keep his belongings. The niece also testified that she was anticipating that White would return to her house that evening. The State cross-examined the niece about her prior juvenile convictions for making a false statement to a public servant and third degree theft. Defense counsel did not object to this line of questioning.

The trial court instructed the jury that the State had "the burden of proving each element of each crime beyond a reasonable doubt" and that White had "no burden of proving that a reasonable doubt exists." Clerk's Papers (CP) at 30. The trial court also instructed the jury that White was presumed innocent and this presumption persists "unless during [the jury's] deliberations [the jury] find[s] it has been overcome by the evidence beyond a reasonable doubt." CP at 30.

During its closing argument, the State noted that White likely did not live in the neighborhood where he was apprehended: "[b]y all accounts, this is not a neighborhood where Mr. White lives." RP at 481. The State attempted to argue that there was significant circumstantial evidence to show that White was the individual driving the truck at the time of the incident:

So, what I would ask you to consider is that this is really a zero-sum question. Mr. White either was driving or he was not. Those are the only two possibilities. He either was driving or he wasn't. And if you're going to believe that Mr. White was not the driver of that truck, you're gonna have to believe that he just happened to be out walking in a neighborhood where he didn't live, on a cold November night, after 11:00 at night, not wearing a jacket, not wearing a hat, not wearing any gloves or any other winter gear. Two blocks north of the location of a high speed chase and crash, within 10 minutes of that high speed chase and crash. And in the exact same direction from which a driver fled from that high speed [chase] and crash. To believe all that would be a perfect storm of coincidences and circumstances. When there is in fact one thing that explains all of it and that is that Mr. White was driving the truck.

RP at 481-82.

In response to the State's closing argument, defense counsel argued that the evidence showed that White was a passenger in the vehicle and that the factual issues were not as clear cut as the State had framed them to be:

There's also uncontroverted testimony that a witness witnessed him get in the passenger seat of that vehicle. And so, Mr. Morris wanted to argue that this was essentially a zero sum, that either it is or it isn't, right. Maybe that's the case, but that's not where we begin. We begin by saying Mr. White is innocent, presumed to be innocent, right. Until that presumption is met by the State meeting it's burden to prove every element of this offense beyond a reasonable doubt.

RP at 486.

The jury found White guilty of attempting to elude a police vehicle and hit and run. After the jury's verdict was read aloud, the trial court polled the jury. Although the

5

record stated that there was "[n]o audible response" from several of the jurors, after polling the jury, the trial court noted that each of the jurors and the jury as a whole had found White guilty on both counts.

*Felony Violation of a No-Contact Order (No.38506-0-III)*

While White was in custody awaiting trial on the attempting to elude charge, he made several phone calls to an individual protected by a no-contact order. The State charged him with felony violation of a no-contact order along with a domestic violence enhancement, and the case proceeded to a jury trial.

After the State rested, White brought a motion to dismiss based on venue. White asserted that there was no evidence presented in the State's case in chief that any portion of the crime had been committed in Douglas County because he had been in jail in Okanogan County at the time of the crime and it was unknown where the victim had been when she received the calls. White asserted that this violated his right under article 1, § 22 of the Washington Constitution to an impartial jury of the county in which the offense is charged to have been committed.

After a long discussion between the parties and the trial court, the trial court denied the motion finding that it was untimely and White had therefore waived his right to assert the venue issue. The trial court determined that White could have raised the issue when the charges were initially brought approximately sixth months prior.

The jury found White guilty of violation of a court order and also found the domestic violence enhancement.

Following the jury's verdict, defense counsel initially indicated he wanted the jury to be polled. However, prior to the trial court polling the jury, defense counsel interjected to say that White "changed his mind" and did not want the jury polled. RP at 851. The trial court did not poll the jury.

The trial court sentenced White to 60 months imprisonment followed by 12 months of community custody for the violation of a no contact order conviction.

White appealed from the verdicts in both trials, and this court consolidated his appeals.

## ANALYSIS

1.  PROSECUTORIAL MISCONDUCT (CASE NO. 38505-1)

White argues that the prosecutor committed misconduct in his first trial by misstating the burden of proof and arguing facts not in evidence. We agree that one of the statements was improper but determine that White has failed to demonstrate incurable prejudice.

"'In order to establish prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" *State v. Slater*, 197 Wn.2d 660, 681, 486 P.3d 873 (2021) (internal quotation marks omitted) (quoting *State v. Magers*, 164 Wn.2d 174, 191,

7

189 P.3d 126 (2008)). "Prosecutors have 'wide latitude' in closing argument, but their argument must be based on the evidence and must not misstate the applicable law." *State v. Crossguns*, 199 Wn.2d 282, 296-97, 505 P.3d 529 (2022) (citing *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012)). The burden for proving prosecutorial misconduct is on the defendant. *Id.* at 297. The defendant must demonstrate not only that the conduct was improper but also that it was prejudicial. *Id.*

The State bears the burden of proving its case beyond a reasonable doubt and may not assert arguments that misstate the law or shift the burden of proof to the defendant. *State v. Emery*, 174 Wn.2d 741, 759-60, 278 P.3d 653 (2012). It is the role of the jury to weigh evidence and determine whether the State has met its burden. *Crossguns*, 199 Wn.2d at 297. "The jury's job is not to determine the truth of what happened . . . . Rather, a jury's job is to determine whether the State has proved the charged offenses beyond a reasonable doubt." *Emery*, 174 Wn.2d at 760.

White contends that the prosecutor committed misconduct when he told the jury that "this is really a zero-sum question" and either White was driving or he was not. RP at 481. "[I]f you're going to believe that Mr. White was not the driver of that truck, you're gonna have to believe that he just happened to be out walking in a neighborhood where he didn't live." RP at 481. White characterizes this on appeal as an improper "false choice" argument. We disagree. Not every closing argument that presents the jury with a choice presents it with a *false* choice.

A prosecutor presents jurors with a false choice that shifts the burden of proof when they argue that jurors must either believe the State's witnesses/version of events or the defendant's witnesses/version of events. This presents a false choice because the jury can acquit a defendant not because it believes his evidence, but because it entertains a reasonable doubt as to the State's case. *E.g., State v. Miles*, 139 Wn. App. 879, 890, 162 P.3d 1169 (2007). The prosecutor never told this jury that unless it believed Mr. White's version of events, it was required to convict. He acknowledged his burden of proving the elements of the charged crimes beyond a reasonable doubt.

No false choice is being invited when the State's evidence conflicts with the defendant's and the State merely argues why the defendant's version is implausible. *Id*. It is a fact that Mr. White was either driving the vehicle that was involved in the eluding and hit and run incidents or he was not. The State did not engage in prosecutorial misconduct by arguing from facts in evidence that Mr. White's claim not to have been driving was implausible.

White also contends that the prosecutor engaged in misconduct by going on to argue that if jurors believed that White was not driving the truck, then "you're gonna have to believe" other matters, including that he did not live in the neighborhood. We agree that this comment was improper because it argued facts not in evidence. *See State v. Dhaliwal*, 150 Wn.2d 559, 577, 79 P.3d 432 (2003).

9

On two occasions during closing, the prosecutor told the jury that White did not live in the neighborhood where he was found walking. First, the prosecutor stated: "By all accounts, this is not a neighborhood where Mr. White lives." RP at 481. Then, after suggesting to the jury that they had to decide if White was driving the truck, the prosecutor told the jury that if they believed White was not driving the truck, then they had "to believe that he just happened to be out walking in a neighborhood where he didn't live." RP at 481. There was no evidence of where White was living at the time, much less that he did not live in that neighborhood.

The State responds that the prosecutor was making a reasonable inference from evidence. It points out that White's niece testified that he stayed at her house often enough that she had a room set aside for him where he kept some items. She also indicated that she was expecting him to stay with her on the night he was arrested. But she was clear that he would spend the night and she did not know where he lived. From this evidence, the State contends that it is reasonable to assume that White did not live nearby or else he would not need to stay at her house. This is not a reasonable inference. White could just as easily have been experiencing homelessness at the time, which would also explain the situation with his niece.

10

While the prosecutor's comments were improper, reversal is not automatic.[1] White's failure to object raises the bar. Under this heightened standard, a defendant who fails to object to misconduct at trial must show more than impropriety and prejudice to succeed on appeal. *State v. Loughbom*, 196 Wn.2d 64, 74, 470 P.3d 499 (2020). Instead, the defendant must show that the misconduct was flagrant and ill-intentioned, and that the resulting prejudice was incurable. *Crossguns*, 199 Wn.2d at 299. This requires the defendant to show that "'no curative instruction would have obviated any prejudicial effect on the jury' and that 'the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury verdict.'" *Id.* (quoting *Emery*, 174 Wn.2d at 761) (internal quotation marks omitted).

More recently, the Supreme Court has made it clear that our review of unchallenged prosecutorial misconduct "'should focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured.'" *Crossguns*, 199 Wn.2d at 299 (quoting *Emery*, 174 Wn.2d at 762); *see also State v. Walker*, 182 Wn.2d 463, 478, 341 P.3d 976 (2015) ("We do not

---

[1] The Supreme Court has developed a separate test for race-based prosecutorial misconduct. Under this test, "when a prosecutor *flagrantly or apparently intentionally* appeals to racial bias in a way that undermines the defendant's credibility or the presumption of innocence, their improper conduct is considered per se prejudicial, and reversal of the defendant's convictions is required." *State v. Bagby*, 200 Wn.2d 777, 788-89, 522 P.3d 982 (2023) (citing *State v. Zamora*, 199 Wn.2d 698, 715, 512 P.3d 512 (2022)).

11

focus on the prosecutor's subjective intent in committing misconduct, but instead on whether the defendant received a fair trial in light of the prejudice caused by the violation of existing prosecutorial standards and whether that prejudice could have been cured with a timely objection.").

Incurable prejudice has only been found "in a narrow set of cases where we were concerned about the jury drawing improper inferences from the evidence." *In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 170, 410 P.3d 1142 (2018). The Supreme Court has recognized reversible misconduct under this heightened standard when the misconduct is either so inflammatory that it threatens the fundamental fairness of trial or when it is so severe as to demonstrate that it was flagrant and ill intentioned. *See Id.* at 171. On the other hand, even when the non-race-based misconduct touches on a constitutional right, it is not per se incurable. *Emery*, 174 Wn.2d at 763.

In *Crossguns*, the Court affirmed the heightened standard noted in *Emery* and instructed reviewing courts to focus on whether the misconduct was curable. 199 Wn.2d at 299. In that case, the prosecutor twice told jurors it was their job to determine who was lying and who was telling the truth. *Id*. at 298. The court found that had the defendant objected, the trial court would have explained the jury's proper role and reiterated the State's burden of proof. *Id*. at 300. Such an instruction would have been sufficient to eliminate any confusion and cure the potential prejudice from the prosecutor's improper remarks. *Id*..

Here, the misconduct does not "come close to the level of severity our precedent suggests is necessary to meet the 'flagrant and ill intentioned' standard." *Phelps*, 190 Wn.2d at 171. Instead, it was just as curable as the misconduct found in *Crossguns*. Had White objected, the court could have reminded the jury of their proper role and reiterated the State's burden of proof.

Notably, the trial court did instruct the jury that White was presumed innocent and that the State had the burden of proving each element of the charges beyond a reasonable doubt. The trial court also explained that the State's burden persists throughout trial unless the jury finds that the State has met its burden. We presume that the jury followed these instructions. *State v. Kalebaugh*, 183 Wn.2d 578, 586, 355 P.3d 253 (2015) ("Jurors are presumed to follow the court's instructions.").

While the prosecutor's comments were improper, they were curable and do not constitute egregious circumstances.

2.      VIOLATION OF NO-CONTACT ORDER (CASE NO. 38506-0-III)

In White's second case, No. 38506-0-III, he raises several challenges to his conviction and sentence for felony violation of a no-contact order. Through counsel, White contends that his combined sentence of incarceration and community custody exceeds the statutory maximum sentence for a class C felony. We affirm White's conviction but remand for resentencing.

*Statutory Maximum Sentence*

13

White contends that his sentence of 60 months imprisonment plus 12 months of community custody exceeds the five-year statutory maximum as provided by RCW 9.94A.701(10). The State concedes this error, and we accept the State's concession.

Unless a different maximum sentence is specifically established by statute, the maximum sentence for a class C felony is 60 months. RCW 9A.20.021(1)(c). The term of imprisonment combined with the term of community custody may not exceed the statutory maximum. *State v. Boyd*, 174 Wn.2d 470, 472-73, 275 P.3d 321 (2012). Our Supreme Court has determined where a sentence exceeds a statutory maximum under RCW 9.94A.701(10), the case should be remanded so that the trial court can either amend the community custody term or resentence the defendant. *Boyd*, 174 Wn.2d at 473.

White's combined term of imprisonment and community custody is in excess of the statutory maximum.

3.    STATEMENT OF ADDITIONAL GROUNDS

The following issues were raised by White in his SAG. Some of the issues are not preserved or are otherwise addressable on their merits under the rules of appellate procedure. However, we consider two of his issues on the merits.

*Venue*

White argues that the violation of a no contact order charge was improperly brought in Douglas County instead of being charged in Okanagan County, the county in

which the crime took place.  After the State rested, defense counsel brought a motion to change venue, arguing that the State had failed to present evidence that the crime had occurred in Douglas County.  The trial court denied the State's motion as untimely.  We find that White waived his right to challenge venue by raising the objection at the end of trial.

This court reviews a trial court's ruling on a motion to change venue for an abuse of discretion.  *State v. Stearman*, 187 Wn. App. 257, 264, 348 P.3d 394 (2015).

Article 1, section 22 of the Washington Constitution states in part: "In criminal prosecutions the accused shall have the right . . . to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed[.]" "Proper venue is not an element of a crime and is not a matter of jurisdiction." *State v. McCorkell*, 63 Wn. App. 798, 800, 822 P.2d 795 (1992) (internal citation omitted). "Rather, venue is a constitutional right that is waived if not asserted in timely fashion." *State v. Pejsa*, 75 Wn. App. 139, 145, 876 P.2d 963 (1994).  Generally, a defendant must assert their constitutional venue right before jeopardy attaches, or before the jury is sworn in. *Id.* (defendant waived right to assert venue because he did not present issue until the end of the State's case).

Further, CrR 5.1(a) provides that "[a]ll [criminal] actions shall be commenced . . . [i]n any county wherein an element of the offense was committed or occurred." "When there is a reasonable doubt whether an offense has been committed in one of two or more

15

counties, the action may be commenced in any such county." CrR 5.1(b). When a case is filed pursuant to CrR 5.1(b), a defendant has a right to change venue to "any other county in which the offense may have been committed." CrR 5.1(c). "Any objection to venue must be made *as soon after the initial pleading is filed as the defendant has knowledge upon which to make it*." CrR 5.1(c) (emphasis added).

White did not raise the venue issue until after the State rested, despite the fact that the no contact order charge was brought approximately sixth months prior. Because his objection was untimely, White waived any challenge to venue.

White also claims that the State failed to present sufficient evidence that the crime occurred in Douglas County. As stated above, White's venue argument was waived, and venue is not an element of a charged crime. *See Pejsa*, 75 Wn. App. at 145.

*Right to Counsel*

White broadly asserts that the trial court's decision to hold pretrial hearings via Zoom deprived him of his right to counsel as well as his right to appear and defend in person. He claims that the Zoom hearings were not because of Covid-19. White objected to several pretrial hearings that were being held by way of remote video. White's primary objection was that he had a right to appear and defend his case in person. However, at one point he also mentioned that he was unable to talk with his attorney during the hearing. Although White repeatedly objected to the Zoom hearings

below, White was represented by defense counsel, and defense counsel did not object to the Zoom hearings.

A criminal defendant has a constitutional right to the assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. Constitutional challenges are issues of law reviewed de novo. *State v. Vance*, 168 Wn.2d 754, 759, 230 P.3d 1055 (2010).

In February 2021, our Supreme Court issued its fifth order regarding court operations during the Covid-19 pandemic. The order noted the importance of protecting "public health while ensuring continued access to justice and essential court services" during the pandemic. Fifth Revised & Extended Ord. Regarding Ct. Operations, No. 25700-B-658, at 2, *In re Statewide Response of Courts to the Covid-19 Public Health Emergency* (Wash. Feb. 19, 2021), https://www.courts.wa.gov/content/publicUpload /Supreme%20Court%20Orders/25700-B-658.pdf. And the order expressly allowed for the holding of hearings for criminal proceedings remotely:

> Courts should continue to allow telephonic or video appearances for all scheduled criminal and juvenile offender hearings whenever appropriate. All in-person appearances must be conducted with strict observance of social distancing and other public health measures. For all hearings that involve a critical stage of the proceedings, courts shall provide a means for defendants and respondents to have the opportunity for private and continual discussion with their attorney.

*Id.* at 11.

White's primary objection during these hearings was that he had a right to appear in person. He does not provide, nor could we find, any authority that supports a constitutional right to appear in person for pretrial hearings that are not considered a critical stage of the proceeding.

During the trial readiness hearing, White also commented that he was unable to talk with his attorney. Assuming without deciding that this was true, White does not demonstrate that this hearing was a critical stage of the proceedings.

"A critical stage is one 'in which a defendant's rights may be lost, defenses waived, privileges claimed or waived, or in which the outcome of the case is otherwise substantially affected.'" *State v. Heddrick*, 166 Wn.2d 898, 910, 215 P.3d 201 (2009) (quoting *State v. Agtuca*, 12 Wn. App. 402, 404, 529 P.2d 1159 (1974)). It includes "those pretrial procedures that would impair defense on the merits if the accused is required to proceed without counsel." *Gerstein v. Pugh*, 420 U.S. 103, 122, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975). "A complete denial of counsel at a critical stage of the proceedings is presumptively prejudicial and calls for automatic reversal." *Heddrick*, 166 Wn.2d at 910.

Contrary to his contention that the Zoom hearings were unrelated to the Covid-19 pandemic, White's pretrial hearings were held remotely pursuant to the Supreme Court's February 2021 order and prior orders noted therein. There is no indication in the record that the hearings in which White appeared by remote video were critical stages of the

proceedings or that White's presence or participation was necessary. Moreover, there is

nothing present that would show White needed to be able to confer with defense counsel

during these hearings. Accordingly, we determine that there is no prejudice evident from

holding these hearings remotely and disagree with White's argument regarding this

claim.

### *Additional Arguments*

White raises several additional claims in which he fails to "inform the court of the

nature and occurrence of alleged errors." RAP 10.10(c). White claims that he never saw

defense counsel in court until trial. Although it is unclear whether defense counsel

appeared in person in court prior to trial, he did appear on behalf of White numerous

times via video. Any allegations that counsel failed to consult or communicate with

White is outside of the record on direct appeal and will need to be raised in a personal

restraint petition.

White also claims that he was improperly "blocked from seeing the jury" during

his first trial in No. 38505-1-III. The record reflects that White raised this issue, and it

was immediately addressed by the trial court. White did not raise the issue again and the

record does not indicate that there were any continuing problems with line-of-sight.

White raises complaints about his attorney, saying that he "did not object to things

that should have been objected to." SAG No. 7 at 6. White states that on the record,

during the first trial, when the trial court polled the jury, several of the jurors had "no

19

audible response." SAG No. 6 at 5. However, the trial court subsequently noted that all of the jurors had confirmed the guilty verdict. Because it is unclear what error White is alleging in these claims, we decline to address each of these claims. *See* RAP 10.10(c).

Additionally, White notes that the trial court did not poll the jury after his second trial, No. 38606-0-III. But the record shows that White actually informed defense counsel that he did not want the jury polled. Therefore, we determine that the invited error doctrine precludes White from raising any argument with regard to this issue. *State v. Sweany*, 162 Wn. App. 223, 228, 256 P.3d 1230 (2011) (quoting *State v. Pam*, 101 Wn.2d 507, 511, 680 P.2d 762 (1984)) ("The invited error doctrine 'prohibits a party from setting up an error at trial and then complaining of it on appeal.'").

White also argues that he was not the driver of the truck discussed in the first case, No. 38505-1-III. White disputed this fact at trial, and the jury was presented with conflicting evidence. "Credibility determinations are reserved for the trier of fact, and an appellate court 'must defer to the [trier of fact] on issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence.'" *State v. Rafay*, 168 Wn. App. 734, 843, 285 P.3d 83 (2012) (quoting *State v. Liden*, 138 Wn. App. 110, 117, 156 P.3d 259 (2007)). White is asking this court to make a credibility determination, and we decline to do so.

White raises arguments that we determine have not been properly preserved for appeal. White argues that the State improperly impeached the testimony of his niece

20

using her juvenile record in the first trial. White also appears to raise a claim regarding defense counsel's motion for a mistrial regarding the newly discovered evidence in the first trial. However, defense counsel withdrew this motion. These issues have not been preserved for appeal, and we decline to address them. *See* RAP 2.5(a).

We affirm White's convictions in both cases. In case number 38506-0-III, we remand for resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Siddoway, J.